## FRANCES S. YORK *vs.* SAMUEL H. JOHNSON.

Worcester. Oct. 1, 1874. — Jan. 9, 1875. COLT & MORTON, JJ., absent.

The defendant, a member of a church, was appointed, with the plaintiff and other members of the church, on a committee to prepare a Christmas festival for the Sunday-school. He declined to serve, and being asked his reason by a member of the committee, said that a third member of the committee, a married man, had the venereal disease, and being asked where he got it, said he did not know, but that "he had been with the plaintiff," who was a woman. *Held*, that this was not a privileged communication.

If a demurrer to the different counts of a declaration is wrongly overruled as to one count, and the jury render a general verdict for the plaintiff, and the counts upon which their verdict is rendered cannot be determined from the bill of exceptions, the verdict will be set aside.

A count in a declaration for slander alleged that the defendant publicly, falsely and maliciously accused the plaintiff of the crime of adultery, by words spoken of her substantially as follows: I (meaning the defendant) was speaking to a certain lady about Mrs. Y. or Mrs. Y.'s case, (meaning the accusation that Mrs. Y., the plaintiff, had a loathsome venereal disease of some kind and had given it to a married man by the name of C. W.) *Held*, that the count did not set forth such circumstances as would show an accusation by the defendant that the plaintiff had committed the crime of adultery, and that the want of such averment was not cured by the innuendo; and that it was bad on demurrer.

TORT for slander. The third count of the declaration was as follows: "The plaintiff further says that the defendant publicly, falsely and maliciously accused her of the crime of adultery, by words spoken of the plaintiff substantially as follows: 'I (meaning the defendant) was speaking to a certain lady about Mrs. York or Mrs. York's case, (meaning the accusation that Mrs. York, the plaintiff, had a loathsome venereal disease of some kind and had given it to a married man by the name of Charles Walton,) and I said, what should you think of a lady who be-

longs to the Congregational Church (meaning the Congregational Church in Shrewsbury) if she should give the pox (meaning a loathsome venereal disease of that name) to a married man, and he should give it to his wife. She (meaning the person with whom he was talking) replied that she should not think her fit to belong to the church, and I, (meaning the defendant,) in answer thereto, said that is the case or our case,' (meaning the above accusation against the plaintiff.")

The defendant demurred on the ground that the allegations in the third and fourth counts did not constitute a charge of an accusation on the part of the defendant that the plaintiff had committed the crime of adultery.

The demurrer was overruled, and the defendant filed an answer containing a general denial, and also alleging that whatever words were spoken were true and privileged.

At the trial in the Superior Court, before *Allen*, J., it appeared that the plaintiff and the defendant were members of the same church, that the plaintiff was a singer in the choir and a teacher in the Sunday-school, that the defendant was one of the board of stewards in the church but not a member of the Sunday-school.

There was evidence tending to show that the plaintiff, for several months prior to the time of the alleged slander, had by her conduct and deportment shown an intimacy with Charles Walton, who was also a singer in said church, and that there were rumors in the neighborhood of her sustaining relations with him of an improper character ; and that one Foster, a physician, who was also a member of the same church, had told the defendant and others in the church that he was doctoring Walton for a venereal disease, and that he had no doubt he had contracted it from the plaintiff ; that he told the defendant that he did not know where Walton did contract the disease, but that he, Walton, had been with the plaintiff. It further appeared that a short time before Christmas, 1872, an effort was made to have a Christmas festival for the Sunday-school of the church, and that at a meeting of those interested a committee was chosen for that purpose ; that at that meeting the plaintiff nominated Walton as one member of said committee, and Walton nominated the plaintiff as another ; that they together with the defendant, Dr. Foster, Mrs. Sarah J. Newton, another member of the church, and others were chosen

on the committee. The defendant declined to serve with them on the committee. A few days after, Mrs. Newton asked the defendant why he declined to serve on the committee, to which he replied that he did not choose to answer. The next day she inquired again his reason, asking if Rev. Mr. Bemis, the pastor, and his wife were not good enough for him to serve with. The defendant, however, did not then give his reasons; and the following day she urged him again to give her a reason for his not serving, saying that she knew that the fact that Walton and the plaintiff were on the committee was the reason, and with a good deal of feeling wanted to know what he knew with reference to them why they were not suitable persons to be on the committee. In answer the defendant said to her, " Walton has got the clap." Mrs. Newton asked the defendant where he, Walton, got it, to which the defendant replied, " My informant said he did not know, but that he, Walton, had been with Mrs. York."

The defendant contended and asked the judge to rule that under the above circumstances the communication to Mrs. Newton was a privileged one, and that if made in good faith, believing it, and in the discharge of a duty which he believed he owed to the members of the committee and to himself, it would not be actionable, without proof of express malice.

The judge ruled that the communication to Mrs. Newton was not a privileged one, and instructed the jury that if the words used by the defendant to Mrs. Newton, in answer to her question where Walton got the disorder, to wit, " My informant said he didn't know, but that he, Walton, had been with Mrs. York," meant that he had been informed that the plaintiff had had criminal intercourse with Walton, such words would be actionable.

The jury returned a verdict for the plaintiff for $1400; and the defendant alleged exceptions.

*G. F. Verry & F. A. Gaskill*, for the defendant.

*B. W. Potter*, for the plaintiff.

DEVENS, J. The ruling requested by the defendant that the communication made by him to Mrs. Newton was a privileged one, and not actionable except with proof of express malice, was properly refused. There was no duty which he owed to Mrs. Newton that authorized him to inform her of defamatory charges against the plaintiff, and no interest of his own which required

protection that justified it. He had declined to serve upon the same committee with Mrs. York, but he was under no obligation to give any reason therefor, however persistently called upon to do so; and even if Mrs. Newton had an interest in knowing the character of Mrs. York as a member of the same church, it was an interest of the same description which every member of the community has in knowing the character of other members of the same community with whom they are necessarily brought in contact, and would not shield a person who uttered words otherwise slanderous. *Krebs* v. *Oliver*, 12 Gray, 239.

There is, however, a ground upon which the verdict must be set aside. The defendant demurred to two of the counts of the plaintiff's declaration, and as the verdict was general and no means exist of determining upon which count it was rendered, or whether rendered upon all, it necessarily follows that if it can-not be sustained upon each, it must be set aside.

Applying to the third count the well settled rules of pleading in actions of this nature, a verdict upon it cannot be sustained. Where words are of doubtful import and not in themselves necessarily actionable, averments, prefatory or otherwise, must be made of those facts which are essential, in order to render them intelligible; and further, these facts should be connected with the words set forth as the substantial slander by a distinct aver-ment that it was in a conversation in reference to such facts or in connection with them that such words were uttered, in this man-ner affixing to them their slanderous character. *Brettun* v. *Anthony*, 103 Mass. 37. Gen. Sts. *c.* 129, § 87. These facts should be the subject of distinct recitals, as they constitute allegations traversable in their nature, which must therefore be so stated that the defendant may in his answer have the proper opportunity to negative them if he desires. Nor can such substantive averments be made merely by the innuendoes; the office of the innuendo is not to introduce new facts, but to affix a meaning to the words used in their connection with facts elsewhere formally set forth in the declaration, and the innuendo is explanatory only of matters sufficiently expressed before. *Bloss* v. *Tobey*, 2 Pick. 320. If it were permitted to introduce new facts only by alleging a meaning to the words uttered such as they do not naturally import, such facts would not be asserted except inferentially. The defendant,

in meeting that part of the declaration which recites the utterance of the words and the meaning which the plaintiff attributes to them, is to meet these two things only, and not new matter thus introduced.

In the third count, after the words " Mrs. York or Mrs. York's case," alleged to have been used by the defendant, the plaintiff adds, " meaning the accusation that Mrs. York, the plaintiff, had a loathsome venereal disorder of some kind, and had given it to a married man by the name of Charles Walton," and thus attempts to enlarge the sense of the words " Mrs. York or Mrs. York's case," by introducing a new fact, the existence of an accusation of the kind in question, which is nowhere else asserted nor even here with distinctness and certainty. The rule that there must be a distinct recital of such antecedent facts as are necessary to give the words the meaning alleged, is not met by merely asserting that they have such a meaning. The fact sought to be introduced by this innuendo must therefore be rejected from the declaration, it not being properly pleaded; and if this is done, no cause of action is set forth. If there were no such accusation as that " Mrs. York, the plaintiff, had a loathsome venereal disease of some kind, and had given it to a married man by the name of Charles Walton," the whole statement might have been made by the defendant as set forth by the plaintiff, and yet no slander have been uttered in reference to her. So far as anything would then be shown by the count, it might be that she was the wife to whom the husband communicated the disorder which he contracted, as it is not alleged that she was the " lady who belongs to the Congregational Church " from whom the alleged slanderous words charged him with contracting the disorder. It is necessary to show in what way those words, taken in their ordinary sense, imported a slander, and the third count fails to meet this requirement.

The demurrer to the third count should have been sustained, and therefore there must be a                        *New trial.*