## COMMONWEALTH *vs.* JAMES H. BENNETT.

**Suffolk.    June 25. — Sept. 4, 1875.    COLT & DEVENS, JJ., absent.**

The provision of the Gen. Sts. *c.* 161, § 42, that, in prosecutions for embezzlement, "it shall be sufficient to allege generally in the indictment an embezzlement" "of money to a certain amount, without specifying any particulars of such embezzlement," is not in conflict with article 12 of the Declaration of Rights.

An indictment under the Gen. Sts. *c.* 161, § 42, which charges a defendant with the embezzlement at a time and place stated of "certain money to the amount and value of twenty-five thousand dollars," sufficiently describes the property embezzled.

An indictment for embezzlement, which charges that the defendant did receive and take "certain money of A.," sufficiently alleges that the money was the property of A.

On the trial of an indictment on the Gen. Sts. *c.* 161, § 42, charging the defendant, as "clerk, servant or agent," with embezzling the money of his employer on September 1, the government, for the purpose of proving the embezzlement, put in evidence the books of the employer containing entries by the defendant from October 1 of the same year to February 6 of the next year, and offered in evidence a transaction under dates of October 1, 2, 3, showing errors in addition, and that the apparent receipts were less than the actual receipts, and also evidence of other similar transactions, with similar errors, during October, and false charges on February 2 and 6 following. The government contended that these separate transactions after October 3, could be put in evidence and the defendant convicted of embezzling the whole amount. The defendant objected to the admission of any transaction after October 3. The judge ruled that under the indictment, the defendant could be convicted of only one act of embezzlement, but that evidence of his other acts was competent on the question of intent. The government then put in evidence of admissions by the defendant, in regard to the false entries of February 2 and 6, to the effect that he took $75 on February 2 and $300 on February 6, but there was no evidence that he took money on any of the previous dates, except what appeared upon the books as introduced. The judge ruled, as requested by the defendant, that the evidence presented by the books would not in itself amount to an embezzlement or alone warrant a conviction. The government was then allowed to elect and rely upon the transaction of February 6 as the principal embezzlement, and that of February 2 as evidence of the intent with which that act was done. *Held,* it not appearing that the government had made any previous election, that it was within the discretion of the presiding judge to allow the government to make this election, that his ruling thereon was not subject to exception, and that his previous rulings were correct.

On the trial of an indictment on the Gen. Sts. *c.* 161, § 42, charging the defendant, as "clerk, servant or agent," with embezzling money from a partnership, one of the firm testified that the defendant had been in the employment of the firm for many years, that about five years prior to the embezzlement an agreement was made with the defendant and a third person by which the defendant was afterwards to receive for his services a certain salary per year and also five per cent. of the profits computed semi annually and that he had so continued until after the

embezzlement, receiving the salary and profits when there were any; that for the past one or two years there had been no profits; that the defendant had, since the agreement, received certain profits; that there was an agreement that the defendant should not share losses; that the witness and his partner had, since the agreement, spoken to each other of having the name of the defendant printed with theirs on the cards and bill-heads of the firm, intended to do so, but were prevented by the fact that they had a supply of the old ones on hand, and that the defendant was only a bookkeeper. *Held*, that the defendant was not a partner, and that a ruling by the presiding judge that he could not be convicted, if he supposed when he took the money that he was a partner, was sufficiently favorable to him, and afforded no ground of exception.

On the trial of an indictment on the Gen. Sts. *c.* 161, § 42, charging the defendant, as "clerk, servant or agent," with embezzling money from his employer, and fraudulently converting it to his own use, there was evidence that the defendant was a bookkeeper, and that he admitted taking money on a certain day; that there was a money-drawer in the office in which all moneys paid in should go. It did not appear that he had any authority, or that it was any part of his duty to receive any money, and there was no evidence to show whether the money taken was taken from the drawer or otherwise. The judge instructed the jury that if the money was in the possession of the defendant by virtue of his employment, and he took it under these circumstances, and fraudulently converted it to his own use, he would be liable to conviction under the indictment; but that if the money, before the taking, had passed into the possession of the firm, and was placed in the money drawer, and was not thus under his control, or in his possession, the defendant could not be convicted under the indictment. *Held*, that there was evidence to warrant a verdict of guilty, and that the defendant had no ground of exception to the instruction given.

INDICTMENT on the Gen. Sts. *c.* 161, § 42, averring that the defendant, on September 1, 1874, at Boston, "being then and there the clerk, servant and agent of Gustavus G. Prescott and Elijah W. Wood, said Prescott and Wood then and there being copartners in business, (the said Bennett not being then and there an apprentice to the said Prescott and Wood, or to either of them, and not being then and there a person under the age of sixteen years,) did then and there, by virtue of his said employment, have, receive and take into his possession certain money to the amount and of the value of twenty-five thousand dollars, of the said Prescott and Wood, as such copartners, the said employers of the said Bennett, and that the said Bennett, the said money so by him had, received and possessed, then and there feloniously did embezzle and fraudulently convert to his own use, without the consent of the said employers, or either of them, whereby, and by force of the statute in such case made and provided, the said Bennett is deemed to have committed the crime of simple

larceny. And so the jurors aforesaid, upon their oath aforesaid, do say, that the said Bennett then and there, in manner and form aforesaid, the said money, of the property and moneys of the said Prescott and Wood, feloniously did steal, take and carry away, against the law, peace and dignity of said Commonwealth, and contrary to the statute in such case made and provided."

In the Superior Court, before the jury were empanelled, the defendant moved to quash the indictment for the following reasons : " 1. Because there is in said indictment no sufficient allegation or description of the money alleged to have been embezzled. 2. Because there is in said indictment no allegation that the money alleged to have been received and embezzled was the property of another person than the defendant. 3. Because the said indictment is argumentative, and is in other respects insufficient and informal." *Dewey*, J., overruled the motion, and the defendant excepted.

At the trial the government called Elijah W. Wood, who testified that he was a member of the firm of Prescott, Wood & Co., in Boston, and that his copartner was Gustavus G. Prescott ; that the defendant had been in the employ of the firm as bookkeeper for some twenty-five years, and had a salary only prior to January 15, 1869 ; that on that date an agreement was made with the defendant, and one Morse, by which, for their services, they were thereafter each to receive a salary of $1500 a year, and also five per cent. of the profits, computed semi-annually, and that they had so continued up to March 11, 1875, receiving the $1500 yearly and profits when there were any ; that for the past one or two years there had been no profits ; that during the six years the defendant had received in profits about $3000 ; that there was an agreement that the defendant should not share losses ; that the witness and Prescott had, on two or three occasions, since January 15, 1869, spoken to each other of having the names of the defendant and Morse printed with theirs upon the bill-heads and cards of the concern, and intended to do so, and would have done so if it had not happened that whenever it was proposed there was a supply of bill-heads and cards on hand ; that the witness had mentioned this to the defendant, and told him of their intentions prior to the date of the embezzlement alleged in the indictment ; that the defendant was bookkeeper, was " confined exclu

sively to the books," and "simply had charge of the books;" that there was a money-drawer in the office, and that all moneys paid in should go, and went in the usual course of business, into this drawer. It did not appear that the defendant had any authority, or that it was any part of his duty, to receive any money, and there was no evidence to show whether any money taken by the defendant was taken from the drawer or otherwise. The cash book of the firm was produced, covering the time from October 1, 1874, to February 6, 1875. The entries were in the handwriting of the defendant.

The government first put in evidence a transaction in the book covering the dates October 1, 2, 3, 1874, and showing the cash receipts for these days; this appeared to have been added at one time, and to have been misadded, so that the apparent receipts were $100 less than the actual receipts. The government then proceeded to introduce the account covering October 5–10, in the same book, where there was a separate addition and a similar misaddition of $200; then the account covering October 5–19, where was a similar misaddition of $100; the account of October 20, 21, where was a misaddition of $100; also a mischarge of $75 on February 2, 1875, and a mischarge of $300 on February 6, 1875.

The government claimed the right to introduce these separate transactions subsequent to October 3, under the provisions of the Gen. Sts. c. 161, § 42,* and to convict the defendant of embezzling the whole amounts of the several misadditions and mischarges. The defendant objected to the admission of any transaction subsequent to that of October 1, 2, 3; the judge admitted the evidence, ruling that the defendant, under the indictment, could be convicted of only one act of embezzlement, but evi-

---

* "And on the trial evidence may be given of any such embezzlement, fraudulent conversion, or taking with such intent, committed within six months next after the time stated in the indictment; and it shall be sufficient to maintain the charge in the indictment, and shall not be deemed a variance. if it is proved that any bullion, money, notes, bank note, check, draft, bill of exchange or other security for money, of such person, bank, incorporated company or copartnership, of whatever amount, was fraudulently embezzled, converted or taken with such intent, by such cashier or other officer, clerk, agent or servant, within said period of six months."

dence of his other acts was competent upon the question of intent, and the defendant excepted. The witness further testified, that on March 11, 1875, he and the defendant were in the office, and he asked the defendant for the balance sheet for the six months ending January 15, 1875 ; that the defendant gave it to him, and he looked it over ; that he then asked the defendant for a paper showing his additions of the balance sheet ; that the defendant gave it to him, and then went out, leaving his hat and coat, and did not come back ; that a day or two after the witness went to defendant's house and saw the defendant, and asked him to give a statement of what he had taken ; that the defendant said he could not, that he had kept an account for several years, but had given it up some time ago ; that he said to the defendant that he (the witness) had been over the balance sheets, and found a discrepancy of $25,000, and the defendant said he thought it was about $20,000, and that it had been done within eight or ten years ; that since that time he had talked with the defendant as to the mischarges of February 2 and February 6 ; that the defendant said that the $75 of February 2, charged to one Aldrich, had been taken by himself, and subsequently the name of Aldrich had been erased with pencil, and his own substituted in pencil ; and that the $300 mischarged on February 6 had also been taken by himself. No other witness was called, and the foregoing was all the material evidence in the case.

The government was then allowed to elect and rely upon the transaction of February 6, as the principal embezzlement, and upon the misadditions and the mischarge of February 2, as evidence on the question of the defendant's intent in taking the $300 on February 6.

The defendant contended that the government had already made an election to rely upon the transaction of October 1, 2, 3, and that the transactions subsequently to that were incompetent for any purpose, and excepted to the allowance of an election at this point.

The defendant then moved for a verdict of not guilty, on the ground that it would not be competent for the jury to convict the defendant on this evidence. The judge declined to direct such a verdict, and the defendant excepted.

The defendant then asked the judge to instruct the jury as follows : " 1. That only one act of embezzlement, and upon a single day or occasion, can be shown under this indictment.  2. That the government has not shown that the defendant was a clerk, servant or agent, within the meaning of the statute, or that the money claimed to have been embezzled came to his possession by virtue of his employment.  3. That the government has not shown whether the offence committed, if any, was embezzlement or larceny, and so the defendant must be acquitted.  4. That there is in the case no sufficient evidence of the necessary fraudulent intent on the part of the defendant.  5. That the mere making of false entries, or additions in the books, will not amount to embezzlement, nor warrant a conviction on this indictment. 6. That if the defendant had an interest in the business, or believed that he had, he cannot be convicted, and that the facts proven show that he did have such an interest that he cannot be convicted.  7. That the jury may find, on these facts, that the defendant had an interest in the business and was a partner, or believed himself to be, and in either case, if the jury so find the fact, he cannot be convicted.  8. That the facts shown by the government are in law sufficient to constitute the defendant a partner, and do so constitute him a partner to the extent, at least, that he cannot be convicted of this offence.  9. That, upon all the evidence in the case, it will not be competent for the jury to find a verdict of guilty.  10. That, if the jury find the defendant guilty, they cannot find a verdict except for the embezzlement of October 1, 2, 3, of the sum of $100.  11. That, on the claim of the government, the defendant cannot be convicted of embezzling more than $300."

The judge gave the 1st, 5th and 11th requests, and as to the 2d request, the judge left it to the jury to say whether or not the government had shown that the defendant was a clerk, servant or agent, within the meaning of the statute, and whether the money claimed to have been embezzled came to his possession by virtue of his employment.

The matter of the 3d request the judge left to the jury, with the instruction, that if the money was in the possession of the defendant by virtue of his employment, and he took it under these circumstances, and fraudulently converted it to his own use

he would be liable to conviction upon this indictment; but that if the money before the taking had passed into the possession of the firm and was placed in the money-drawer, and was not then under his control, or in his possession, the defendant could not be convicted upon this indictment.

On the 4th request, the judge left it to the jury to say whether there was sufficient evidence of the intent.

On the 6th and 7th requests, the judge instructed the jury that if the defendant was a partner, or believed himself to be, and that he had a right to take the money as a partner, and did take it under such belief, he would not be liable for embezzlement, although in law he was not a partner; and left it to the jury to say whether he was a partner, or believed that he was, or believed that he had such an interest in the business as that gave him a right to take the money; in either case he could not be convicted.

The 8th, 9th and 10th requests were refused. And in the matter of the 8th, the judge instructed the jury, that, if they believed the facts as testified to by Wood, as matter of law upon these facts, the defendant, if he fraudulently converted to his own use the property of the firm, could not justify on the ground that he was a partner.

The jury returned a verdict of guilty of embezzling $300 on February 6, 1875; and the defendant alleged exceptions.

*H. R. Cheney,* for the defendant. 1. An allegation of the embezzlement of " certain money to the amount and value of twenty-five thousand dollars," is not sufficient. It does not meet the constitutional provision that an offence must be set out "fully and plainly, substantially and formally." The word "money" is too indefinite. It does not apprise the defendant of what he is to be charged with. " Money " may be coin or paper. It may be our own, or foreign coin. It may be gold, silver, nickel or copper. It may be United States Treasury notes, National Bank notes, State Bank notes, Bank of England notes, or notes of some other kind. No such indictment for larceny has been sustained. *Merrill* v. *State,* 45 Missis. 651. *Lewis* v. *State,* 3 Heisk. (Tenn.) 333. *Crocker* v. *State,* 47 Ala. 53. *Smith* v. *State,* 33 Ind. 159. *Hamblett* v. *State,* 18 N. H. 384. *State* v. *Longbottoms,* 11 Humph. 39. No less particularity is required in embez-

zlemeı.t than in laı ceny.  *Commonwealth* v. *Concannon*, 5 Allen, 502.  *Commonwealth* v. *Butterick*, 100 Mass. 1.

2. There is no allegation that the money alleged to have been received by the defendant was the property of Prescott and Wood. The precedents in both larceny and embezzlement contain the words "of the property and moneys of," oı "of the goods and chattels of," or some equivalent expression.  Train & Heard's Prec. 190, 341.  1 Wharton's Prec. 415, 466.  *Commonwealth* v. *Morse*, 14 Mass. 217.  *Commonwealth* v. *Manley*, 12 Pick. 173.  *State* v. *Bartlett*, 55 Maine, 200, and cases cited. The statute uses and requires the words "property of."  It is not enough to allege that the money was "of" Prescott and Wood, if that be the allegation.  But the allegation rather seems to be that the money was had and received of Prescott and Wood.

3. Evidence of any transaction subsequent to October 3, was incompetent.  The government having proved the transaction of October 1, 2, 3, as the principal act, and having attempted to introduce the subsequent acts under the Gen. Sts. *c.* 161, § 42, could not, when the judge had ruled these incompetent for the purpose intended, abandon what was originally relied on as the principal transaction, put in these subsequent oıes, and then select as the foundation of a verdict that which may happen to involve the largest amount or be most clearly proved, using the first transaction as well as the others on the question of intent. The jury should have been instructed that the government was held to the first transaction, and that they could find the defendant guilty only of embezzling the $100 of October 1, 2, 3.

The transactions admitted on the question of intent were not competent for that purpose.  The cases permit only evidence of prior actual embezzlements to be so used.  *Commonwealth* v. *Shepard*, 1 Allen, 575.  *Commonwealth* v. *Tuckerman*, 10 Gray, 173.  Here was evidence only of prior misadditions and mischarges, which the judge rightly instructed the jury would not constitute embezzlement.  There was no evidence that the defendant actually embezzled any amounts except the $75 of February 2, and the $300 of February 6.

5. The evidence did not warrant a conviction, and the judge should have directed a verdict for the defendant.  The defendant, if not strictly a partner, at least had such an interest in the busi

ness as to give him an ownership in money received in the course of the firm business. The $300 taken February 6 may have been all profits. It may have been indeed no more than the defendant's share of the profits since the last computation. He certainly had an undivided interest in the profits; nor was he a clerk, servant or agent, within the meaning of the statute. He was at least a *quasi* partner and a part owner. A simple book-keeper cannot be guilty of this offence. A servant who has no authority or duty to receive money cannot embezzle it. The embezzlement can be only by the cashier or other servant whose duty it is to receive it.

A verdict should have been directed for the defendant, because the evidence does not show whether the offence, if any, was larceny or embezzlement. There is no evidence that the money came to the possession of the defendant by virtue of his employment, or came to his possession at all; and there was therefore no evidence of embezzlement. Gen. Sts. *c.* 161, § 38. *Commonwealth* v. *Davis*, 104 Mass. 548. *Rex* v. *Thorley*, 1 Moody C. C. 343. 2 Bishop Crim. Law, (5th ed.) § 360.

It was no part of the defendant's employment to take or receive money. He was a bookkeeper, and confined exclusively to the books. It does not appear that he ever rightfully received this $300, or any money of the firm. The only evidence is that in some way he took it; whether before or after it had come into the master's possession is unknown. How or when, or from what place, the evidence does not show. The money may have been taken from the drawer. If so, it was larceny. *Commonwealth* v. *Berry*, 99 Mass. 428. *Commonwealth* v. *Barry*, 116 Mass. 1. *Regina* v. *Wright*, Dears. & B. 431. *Regina* v. *Reed*, Dearsly, 257. *Bazeley's case*, 2 Leach, (4th ed.) 835, 841, and *Bull's case*, there cited. It does not appear who received this money or who had charge of the drawer. There was no evidence for the jury.

*W. G. Colburn*, Assistant Attorney General, (*C. R. Train*, Attorney General, with him,) for the Commonwealth.

ENDICOTT, J. 1. This indictment is under the Gen. Sts. *c.* 161, § 42. That section provides that in prosecutions for embezzling bullion, money, notes, bank notes, checks, drafts, bills of exchange, obligations or other securities for money, it shall be suffi-

cient to allege generally in the indictment an embezzlement or fraudulent conversion " of money to a certain amount, without specifying any particulars of such embezzlement." The allegation here is of an embezzlement of " certain money to the amount and value of twenty-five thousand dollars." This is in conformity to the statute, and in accordance with the practice which has prevailed under this and previous statutes. Rev. Sts. *c.* 133, § 10. St. 1834, *c.* 186, § 2. Nor is it open to the objection, that the offence is not set forth " fully and plainly, substantially and formally," as required by the Declaration of Rights, art. 12. The defendant, if he had desired, could have applied for a specification of the particular acts relied on by the government; as may be done in other cases where the offence is of a general nature, and the charge is in general terms. Such an application might have been made at the trial, and granted by the court if in its discretion the circumstances of the case required it. *Common wealth* v. *Wood,* 4 Gray, 11, 13.

2. The allegation that the defendant did receive and take certain money " of the said Prescott & Wood," is a sufficient allegation that it was the money and property of Prescott & Wood. In *Eastman* v. *Commonwealth,* 4 Gray, 416, the indictment charged the defendant with stealing a bank bill " of the goods and chattels of one Daniel Carter;" and it was held that, while a bank bill might not be properly termed goods and chattels, yet those words might be rejected as surplusage, and the indictment stand as properly charging a larceny of the property of Carter.

3. To prove the embezzlement, the books of Prescott & Wood were produced containing entries by the defendant from October 1, 1874, to February 6, 1875. The government offered in evidence a transaction under dates of October 1, 2, 3, showing errors of addition, and that the apparent receipts were less than the actual receipts. Other similar transactions with similar errors during October, and false charges on February 2 and 6 following, were also offered.

The government contended that these separate transactions after October 3 could be put in evidence, and the defendant convicted of embezzling the whole amount. The defendant objected to the admission of any transaction after October 3.

The court ruled that under the indictment the defendant could be convicted of only one act of embezzlement, but evidence of his other acts was competent on the question of intent. This ruling, that the other acts were competent for that purpose, was correct. Gen. Sts. *c.* 161, § 42. *Commonwealth* v. *Tuckerman*, 10 Gray, 173. *Commonwealth* v. *Shepard*, 1 Allen, 575. *Commonwealth* v. *Edgerly*, 10 Allen, 184. *Commonwealth* v. *Coe*, 115 Mass. 481.

Evidence was then introduced of admissions by the defendant in regard to the false entries of February 2 and 6, to the effect that he did take $75 on February 2, and $300 on February 6 ; but there was no evidence that he took money on any of the previous dates, except what appeared upon the books as introduced. And the presiding judge ruled, as requested by the defendant, that the evidence presented by the books would not in itself amount to an embezzlement, or alone warrant a conviction.

The government was then allowed to elect and rely upon the transaction of February 6, when the defendant admitted that he took $300, as the principal embezzlement, and the transaction of February 2 as evidence of the intent with which he took the $300. We see no objection to this course. It does not appear that the government had previously made any election to treat the transaction of October 1, 2, 3, as the principal embezzlement, and the questions argued by the defendant on that point are not raised in this case. The election to proceed on the transaction of February 6 was the only election made, and that after the evidence was all in. It was clearly within the discretion of the presiding judge. *Commonwealth* v. *Slate*, 11 Gray, 60. *Commonwealth* v. *Edds*, 14 Gray, 406. Nor does it appear that the government contended or that the court ruled, when the case was submitted to the jury, that any other transaction except that of February 2, of which there was proof of actual embezzlement, was competent on the question of the intent with which the defendant took the money on February 6.

4. The defendant was not a partner. He had only a contingent interest in the profits, and no interest in the property or capital of Prescott & Wood. *Haskins* v. *Warren*, 115 Mass. 514, 539. The ruling that he could not be convicted, if he supposed, when he took the money, that he was a partner, was sufficiently favorable to him.

5. There is no just ground of exception to the ruling that if the jury found that the money came into the defendant's hands by virtue of his employment, and he fraudulently converted it to his own use, he could be convicted under the indictment. There was evidence that it came into his possession; whether it was in his possession by virtue of his employment, was for the jury to determine. Upon all these questions, there was evidence which warranted the submission of the case to the jury.

*Exceptions overruled.*