## COMMONWEALTH *vs.* ROBIN DAMON.

Essex.   Jan. 6. — Feb. 29, 1884.   W. ALLEN & HOLMES, JJ., absent.

An indictment alleged that the defendant, who was the publisher of a newspaper, published a libel upon one H., who was the marshal of a certain city, consisting of a letter written to the defendant by a third person, the material parts of which were as follows: " The writer of this article hired recently a stand at the corner of E. and C. Streets, for the sale of flowers, for a season of about two months. After locating I was instructed by Marshal H. (meaning thereby the said H.) and threatened with prosecution. It is well known that this corner has been occupied for years by parties, and some not citizens, who have obstructed the sidewalk more or less, yet they have carried on their business unmolested. There are a dozen or more parties, not far from the police station, who obstruct a great portion of sidewalks every day, and they are allowed so to do. Yet the narrow shelf located on this corner, that I hired to do a legitimate business and which would contain nothing but flowers, at once an ornament and no obstruction whatever, was obnoxious to this official (meaning thereby the said H.). Why this partiality? Does it require the presentation of a turkey, potatoes, flowers, a gold watch, or other perquisites, quietly delivered, to close the eye of this vigilant official (meaning thereby that the said H. had been bribed by offenders against the law to neglect his official duty as city marshal) in every particular case? If so, I am not so disposed in such cases." *Held*, that the publication, even if the innuendo be considered too broad, conveyed the imputation

that H., as city marshal, received presents for permitting persons to occupy the sidewalks of the city; and that he threatened the defendant with prosecution for obstructing the sidewalk, maliciously, and because he had received no presents from him.

At the trial of an indictment against the publisher of a newspaper for libel, who offers evidence of the truth of the statements in the alleged libel, other publications in the same paper, if they tend to show general ill-will towards the person alleged to have been libelled, and are of such a nature as to indicate a persistent disposition of hatred towards him, or if they appear to be a part of a settled purpose to bring him into public hatred, contempt, or ridicule, and are sufficiently near in time to afford a natural inference that the same state of mind existed when the alleged libellous publication was made, are admissible in evidence, although they are published subsequently to the alleged libel, and do not expressly refer to it.

At the trial of an indictment against the publisher of a newspaper for libel upon a person holding a public office, if the defendant offers himself as a witness, he may be asked, on cross-examination, whether, from the time of the publication of the alleged libel, his paper contained articles which were unfriendly to the person alleged to have been libelled, or whether the paper pursued an unfriendly tone towards him, and whether the paper had since contained anything friendly to or in commendation of such person.

At the trial of an indictment against the publisher of a newspaper for libel, if the truth of the matters contained in the alleged libel, evidence of which is offered, is established, the government must show that the defendant, in a legal sense, actually participated in, or authorized, the publication, and that he did this with an actual malicious intention.

At the trial of an indictment against the publisher of a newspaper for libel, who offered evidence of the truth of the statements in the alleged libel, the judge instructed the jury that, "if the truth of the article is established as claimed by the defendant, it is a perfect and complete defence, unless express malice in the publication is shown,—malice in the popular sense of hatred and ill-will." *Held*, that the defendant had no ground of exception.

INDICTMENT, alleging that the defendant, on May 18, 1883, at Salem, " contriving and unlawfully and maliciously intending to injure, vilify, and prejudice one John W. Hart, and to deprive him of his good name, fame, credit, and reputation, and to bring him, the said Hart, into great comtempt, scandal, infamy, and disgrace," " unlawfully did compose, write, print, and publish, and cause and procure to be composed, written, printed, and published in a certain newspaper then and there published by said Damon and called the Salem Evening News, a false, scandalous, and defamatory libel, in the form of a letter purporting to have been written to the editor of said newspaper by one Nicholas J. Dean, and then and there printed and published in said newspaper by the said Damon as aforesaid, the said false, scandalous, malicious, and defamatory libel then and there containing divers false,

scandalous, malicious, and defamatory matters and things of and concerning said John W. Hart, and of and concerning the acts of said John W. Hart in his official capacity as city marshal of said city of Salem, the said Hart being then and there and having theretofore and for a long time been the city marshal of said city of Salem, which said false, scandalous, malicious, and defamatory libel is according to the tenor following, that is to say:

" ' A Malicious City Marshal (meaning thereby the said John W. Hart).

" ' Editor of News : — With your permission, I desire to make public the actions of a certain city official (meaning thereby the said John W. Hart), which is beneath the dignity the position requires, and unbecoming any man. The writer of this article hired recently a stand at the corner of Essex and Central Streets, for the sale of flowers, for a season of about two months. After locating I was instructed by Marshal Hart (meaning thereby the said John W. Hart), and threatened with prosecution. It is well known that this corner has been occupied for years by parties, and some not citizens, who have obstructed the sidewalk more or less, yet they have carried on their business unmolested. There are a dozen or more parties not far from the police station, who obstruct a great portion of sidewalks every day, and they are allowed so to do. Yet the narrow shelf located on this corner, that I hired to pursue a legitimate business and which would contain nothing but flowers, at once an ornament, and no obstruction whatever, was obnoxious to this official (meaning thereby the said John W. Hart). Why this partiality? Does it require the presentation of a turkey, potatoes, flowers, a gold watch, or other perquisites, quietly delivered, to close the eye of this vigilant official (meaning thereby that the said John W. Hart had been bribed by offenders against the law to neglect his official duty as city marshal as aforesaid) in every particular case? If so, I am not so disposed in such cases. But let us look at some of his past transactions toward me, and the public will easily perceive the underlying motive in this instance. From the beginning of my term upon the police force, to its close of two years, the marshal was opposed to me; in fact, he stated to parties, names given if desired, that I was placed there against

his wish, and used his power and position until he obtained my removal. He otherwise injured me in a manner well known to himself, and in direct opposition to his duty; and now, knowing my opinion of him as a man, he wishes, by a farther exercise of his malice, to deprive me of a means to gain an honest living. This is done under pretext of complying with city ordinance and duty; but it is strained, and malice is prominent from the start. An officer who will stoop to such a proceeding is not fit to fill such a position, and needs close attention. I ask or require no more privileges or favors than others, but I fail to see wherein others can obtain favors and rights denied to me. But this man fails to recognize the right of all to live and let live, which is a virtue unknown to him.

" 'Nicholas J. Dean.' "

the said Robin Damon then and there well knowing the said defamatory libel to be false; to the great damage, scandal, and disgrace of the said John W. Hart, and against the peace of the Commonwealth aforesaid, and contrary to the form of the statute in such case made and provided."

In the Superior Court, before the jury were empanelled, the defendant moved to quash the indictment, for the following reasons: " 1. Said indictment does not set forth any offence which is indictable or punishable under the laws of this Commonwealth. 2. It is nowhere alleged, by appropriate averments, in what way the words set forth could or did affect the party to be defamed injuriously, nor are any facts set forth to which the language alleged to be libellous could so refer as to constitute such language libellous. 3. It is nowhere averred what portions of the published words are claimed to be either false or libellous, nor in what manner they could or did affect the party alleged to be libelled. 4. The allegations contained in said indictment are insufficient, and no crime is clearly and fully set forth in accordance with the requirements of law."

*Mason*, J., overruled the motion; and the defendant excepted.

At the trial, it appeared in evidence that the defendant was the publisher of the newspaper referred to; and that the article, which is correctly set forth in the indictment, was published in the edition of May 18, 1883.

The defendant offered evidence to prove the truth of the allegations of the alleged libel; but denied that the interrogations therein were allegations.

The government offered in evidence articles published in said newspaper under the dates of May 23, May 29, July 14, July 27, August 1, September 12, and September 17, 1883, for the purpose of showing malice. The defendant objected to their admission; but the judge admitted them for the purpose for which they were offered. A copy of these articles was annexed to the bill of exceptions. The nature of them sufficiently appears in the opinion. No issue was made as to the truth or falsity of these articles.

The defendant offered himself as a witness; and, on cross-examination, was questioned as to a conversation he had with Hart at a time prior to said May 18, and in this connection was asked the following question: " Did your paper from that time on have articles in it that were unfriendly to Mr. Hart?" The answer was, " When the editor thought proper to criticise, he did so, and there were such criticisms." The defendant objected to this question and answer; but they were admitted.

The following questions were also asked in the same connection: " Did your paper pursue an unfriendly tone towards Mr. Hart?" to which the defendant answered, " The tone of the paper was not friendly." " Has the paper since ever contained anything friendly to Mr. Hart, or in commendation of him?" to which the defendant answered, " No." To each of these questions objection was made, but they were allowed to be asked.

The evidence tended to show that the article in question was written by the person whose signature it bore; that it was taken by him to the editor of the defendant's paper, and was accepted; and that the defendant did not know of the writing or publishing of this particular article, being out of town on the day when this took place. This evidence was uncontradicted, but there was other evidence in regard to the general management of the paper.

The defendant asked the judge to instruct the jury as follows: " 1. The defendant cannot be held criminally liable for what appeared in his paper, unless he knew the contents of the article, or had means of knowing the same which he purposely

neglected to use. 2. Malice is of the essence of the offence, and must be found as a fact; and if the defendant had no knowledge at all of the transaction, no malice can be found by the jury. 3. It is wholly immaterial that the defendant in fact entertained feelings of malice toward Hart, unless he is found in some way to have been instrumental in the publishing of the particular article set out in the indictment."

The judge declined to give either of the instructions asked, but instructed the jury, among other things not objected to, as follows: " It must be shown that the libellous article was published by the defendant maliciously. Malice is not used in this connection in the popular sense of hatred and ill-will, but the publication is deemed malicious if done wilfully and unlawfully, in violation of the just rights of another. The law implies malice if the publication is wilful, unless there is justification. It is the duty of the proprietor of a public paper, which may be used for the publication of improper communications, to use reasonable caution in the conduct of his business, that no libels be published; and he is criminally liable for a libellous publication therein, unless the publication is made under such circumstances as to negative any presumption of privity or connivance, or want of ordinary precaution on his part to prevent it. It may be true that the defendant had no knowledge of this specific article, and was not present when it was presented for publication, nor when it was published; he is still liable criminally for its publication, unless he used reasonable care and caution in the conduct of his business to prevent such publication. The jury must be satisfied, beyond a reasonable doubt, that the libellous article was published by the defendant intentionally, or through some want of ordinary care and caution on his part in the conduct of his business.

" If the jury are satisfied that the defendant published the libellous article intentionally, or that it was published in his paper through his want of ordinary care and caution in the conduct of his business as publisher, they are to consider whether the statements of the article were true. If the truth of the article is established, as claimed by the defendant, it is a perfect and complete defence, unless express malice in the publication is shown, — malice in the popular sense of hatred and ill-will;

but in no event can proof of malice take the place of proof of the publication itself. It is entirely immaterial whether the defendant had malice toward Hart, or how intense hatred and ill-will he may have entertained, unless it is established that the defendant published the articles intentionally or through want of due care on his part."

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*N. B. Bryant,* for the defendant.

*E. J. Sherman,* Attorney General, for the Commonwealth.

FIELD, J. The motion to quash was rightly overruled. The publication complained of, even if the innuendo be considered as too broad, does convey the imputation that Hart, as city marshal, received presents for permitting persons to occupy the sidewalks of the city, and that he threatened the defendant with prosecution for obstructing the sidewalk, maliciously, because he had received no presents from the defendant.

The exceptions state that the defendant offered evidence to prove the truth of the allegations of the alleged libel; he thus attempted to bring himself within the protection of the Pub. Sts. c. 167, § 80, and c. 214, § 13. If the jury found that the matters contained in the publication were true, the Commonwealth, to prevail, must show an actual malicious intention on the part of the defendant. *Lothrop* v. *Adams,* 133 Mass. 471. If the jury did not find the publication to be true, the common law of criminal libel governed the case. *Commonwealth* v. *Chapman,* 13 Met. 68. In one aspect of the case, therefore, proof of actual malice on the part of the defendant in making the publication was material.

The publication complained of was made on May 18, 1883. The articles which were admitted for the purpose of showing malice were published in the same newspaper on subsequent days, the last being in September of the same year. The first, second, and fourth apparently refer to matters contained in the publication complained of. The third, fifth, sixth, and seventh each contain criticisms or complaints either of Hart or of city marshals, and the jury may have found that Marshal Hart was intended. We cannot say that any of them appears on its face to be libellous. Some of them apparently tend to show ill-will

towards Hart. The question then does not, as we interpret the exceptions, arise, whether the publication of a subsequent libel of a different character can be admitted as evidence of malice in the publication complained of. In this Commonwealth, it has been decided that, in an action of slander, or in an action or prosecution for a libel, the uttering or publishing of similar words, or of words of a similar import, or declarations upon the same subject, or referring to the publication complained of, may be admitted in evidence upon the issue of actual malice, but that evidence of a distinct and different calumny is inadmissible. *Bodwell* v. *Swan,* 3 Pick. 376. *Watson* v. *Moore,* 2 Cush. 133. *Commonwealth* v. *Harmon,* 2 Gray, 289. *Baldwin* v. *Soule,* 6 Gray, 321. *Markham* v. *Russell,* 12 Allen, 573. *Robbins* v. *Fletcher,* 101 Mass. 115. *Clark* v. *Brown,* 116 Mass. 504. If the other publications were criminally libellous, this would not prevent their admission, as evidence of malice, if otherwise admissible. *Thayer* v. *Thayer,* 101 Mass. 111. *Commonwealth* v. *Nichols,* 114 Mass. 285. *Commonwealth* v. *Coe,* 115 Mass. 481. *Commonwealth* v. *Bennett,* 118 Mass. 443.

In actions in which fraud is involved, it has been settled that evidence of fraudulent transactions with other persons will not be admitted upon the question of intent, unless there appears to be some connection between the fraud alleged and the other transactions, from which the jury can find a purpose common to all. *Jordan* v. *Osgood,* 109 Mass. 457. *Stockwell* v. *Silloway,* 113 Mass. 384. *Haskins* v. *Warren,* 115 Mass. 514. *Horton* v. *Weiner,* 124 Mass. 92. *Commonwealth* v. *Jackson,* 132 Mass. 16. Evidence of acts or declarations of the testator, subsequent to the execution of a will, are evidence of the state of the testator's mind upon the issues of fraud and undue influence, if they are such as to afford a reasonable inference of a condition of mind sufficiently permanent to have existed at the time of the execution of the will. *Shailer* v. *Bumstead,* 99 Mass. 112. *Potter* v. *Baldwin,* 133 Mass. 427. The cases generally on this point in libel are collected in Odgers on Libel and Slander (Bigelow's ed.) 271, and note. It is useless to attempt to reconcile them. We think that, in criminal prosecutions for libel, the reasonable doctrine is, that some connection must be shown between the publication complained of,

and the publications admitted in evidence to prove actual malice; but if these tend to show general ill-will towards the person concerning whom the publication complained of is made, and are of such a nature as to indicate a persistent disposition of hatred or ill-will towards him, or if they appear to be a part of a settled purpose to bring him into public hatred, contempt, or ridicule, and are sufficiently near in time to afford a natural inference that the same state of mind existed when the publication complained of was made, they are admissible, although they are subsequent to the publication complained of, and do not expressly refer to it. We cannot say that the articles admitted in evidence were not of this character.

The questions put to the defendant, who offered himself as a witness, if put to any other witness, might perhaps be held incompetent, as calling for an opinion upon the character of articles published in a newspaper, when, so far as appears, the articles themselves could be obtained, and were the best evidence of what they contained. But the intention or state of mind of the defendant towards Hart, in making the publication with which he was charged, was material; and, for this purpose, his opinion or understanding of the articles published by him in his newspaper as friendly or unfriendly towards Hart, would be relevant upon the question of good or ill will towards Hart with which he made the publication. See *Robbins* v. *Fletcher*, *ubi supra*.

The first two instructions which the defendant asked the court to give, ought not to have been given. If the jury found that the matters contained in the publication were true, they approach more nearly to what we conceive the law to be; but they were not accompanied with this qualification. The third instruction asked for was substantially given. The first part of the instructions given to the jury is in accordance with the law when the truth of the publication is not established. *Commonwealth* v. *Morgan*, 107 Mass. 199. *Commonwealth* v. *Nichols*, 10 Met. 259. If the truth of the matters contained in the publication is established, we think the Commonwealth must show that the defendant in a legal sense actually participated in, or authorized, the publication, and that he did this with an actual malicious intention. The attention of the presiding justice was

not distinctly called by counsel to the different rules of law applicable to the different issues in the case; but the instruction that, "if the truth of the article is established, as claimed by the defendant, it is a perfect and complete defence, unless express malice in the publication is shown, — malice in the popular sense of hatred and ill-will," — is correct as far as it goes, and does not seem to us misleading. If the defendant desired further instructions upon this part of the case, it was his duty to ask for them.

*Exceptions overruled.*