COMMONWEALTH *vs.* VINCENT J. SZLIAKYS.

Suffolk.    December 3, 1925. — January 11, 1926.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & SANDERSON, JJ.

*Libel and Slander.*

The publication of a false and malicious libel is a criminal offence and punishable in this Commonwealth at common law.

While, in an indictment in this Commonwealth for the publication of an alleged false and malicious libel, if the written or printed matter is clearly defamatory of a particular person, no statement of extrinsic facts by way of inducement is necessary, yet if on the other hand the published words do not in their natural sense import a defamatory meaning and it is intended to be shown by extrinsic aid that they do bear that meaning, such additional allegations must be set forth in the indictment by way of introduction, if it is new matter, or by way of innuendo, if it is only matter of explanation.

In an indictment charging a criminal libel concerning the good name, fame, credit and reputation of one G, a statement, without introduction or innuendo, that G "having collected a huge sum of money, and after he (meaning the said G) had emptied the pockets of the weakling and bigoted ones, went back to Lithuania," does not allege nor materially import that G in his capacity as clergyman, if he was such, collected money criminally of the weak and bigoted, nor does it import that the weak and bigoted were induced to empty their pockets by reason of any fraud, dishonesty or moral turpitude of the plaintiff.

A further statement in the indictment above described, "In Germany he (meaning the said G) became acquainted with two young women and lived with them during all the time," does not without innuendo impute an immoral living together.

A further statement in the indictment above described, "After he (meaning the said G) had spent all the money he (meaning the said G) remembered that there were left in America enough 'imbecile' and it is still possible to coax them not only to give him (meaning the said G) money but also the remaining Lithuanian Liberty Bonds," does not charge G with any illegal, immoral or reprehensible conduct.

A further statement in the indictment above described, "Instead of the expected report, Rev. G made known that he (meaning the said G) while experimenting in Germany how to attain all this, has spent all the money he (meaning the said G) had collected for the National Fund and had now come to collect more, knowing that Lithuanian old bigoted women in Amerika are generous, and some of them have Lithuanian Liberty Bonds which with the help of God can be of use to him (meaning the said G," while it charges that G had spent all the money he had collected for the National fund and that he had now come to collect

more, does not allege nor fairly impute that G had not the right to spend all the money, or that he had spent any of it for improper purposes.

On a motion, an indictment containing all of the above described statements should be quashed.

INDICTMENT, found and returned on April 12, 1924, charging criminal libel as described in the opinion.

The defendant in the Superior Court moved to quash the indictment on the grounds stated in the opinion. The motion was heard by *Bishop*, J., and was denied, subject to exceptions by the defendant.

The indictment then was tried before *Broadhurst*, J. The defendant was found guilty and alleged exceptions.

The case was submitted on briefs.

*A. S. Allen*, for the defendant.

*M. Caro*, Assistant District Attorney, for the Commonwealth.

PIERCE, J. The defendant was indicted for criminal libel alleged to concern the good name, fame, credit and reputation of one Pranas Garmus, contained in a newspaper entitled "Sandara" which was published in the Lithuanian language at Boston, on February 21, 1924. The indictment purports to set out in the Lithuanian language, in two sections, the libel in the alleged tenor of the publication, without averments of extrinsic facts or of innuendo to indicate its defamatory meaning; and declares that the alleged libel when translated into the English language "was and is of the same signification and meaning as these words following. . . . :

"'Rev. Garmus having collected a huge sum of money, and after he (meaning the said Garmus) had emptied the pockets of the weakling and bigoted ones, went back to Lithuania. In Germany he (meaning the said Garmus) became acquainted with two young women and lived with them during all the time. After he (meaning the said Garmus) had spent all the money he (meaning the said Garmus) remembered that there are left in America enough "imbecile" and it is still possible to coax them not only to give him (meaning the said Garmus) money but also the remaining Lithuanian Liberty Bonds.

"'Instead of the expected report, Rev. Garmus made known that he (meaning the said Garmus) while experimenting in Germany how to attain all this, has spent all the money he (meaning the said Garmus) had collected for the National Fund and had now come to collect some more, knowing that Lithuanian old bigoted women in Amerika are generous, and some of them have Lithuanian Liberty Bonds which with the help of God can be of use to him (meaning the said Garmus.) During the intermission he (meaning the said Garmus) took up a collection and gathered in about $80.'

"He the said Vincent J. Szliakys then and there well knowing the said defamatory libel to be false; to the great damage, scandal and disgrace of the said Pranas Garmus."

Before the jury were sworn the defendant filed a motion to quash the indictment and assigned as reasons: "(1) The indictment does not set forth any offence which is indictable or punishable under the laws of this Commonwealth"; and "(2) The indictment does not set forth the alleged libellous matter with the degree of precision and particularity required by the laws of this Commonwealth." The motion was overruled and the defendant excepted thereto. Put on his trial, he was found guilty, and was sentenced to pay a fine.

No statute of this Commonwealth defines a criminal libel or declares what shall be the punishment for the publication thereof. Nevertheless, the publication of a false and malicious libel has always by the common law of Massachusetts been an offence punishable by indictment. *Commonwealth* v. *Whitmarsh*, Thach. Crim. Cas. 441. *Commonwealth* v. *Chapman*, 13 Met. 68. *Commonwealth* v. *Damon*, 136 Mass. 441, 447.

The motion to quash proceeds upon the ground that without extrinsic facts and colloquium, the words published, in their natural import, did not have a tendency to bring the plaintiff into public hatred, contempt or ridicule, and thus no crime or offence is sufficiently charged in the indictment to warrant a judgment. In passing it is to be observed that the forms of declaration in slander and libel, G. L. c. 231, § 147, are not applicable to indictments for libel. As defined by Parsons, C.J., in *Commonwealth* v. *Clap*, 4 Mass. 163, at page

168, "A libel is a malicious publication, expressed either in the printing or writing, or by signs and pictures, tending either to blacken the memory of one dead, or the reputation of one who is alive, and expose him to public hatred, contempt, or ridicule." The basis for a criminal prosecution for the publication of a libel "is . . . [its] direct tendency to a breach of the public peace." *Commonwealth* v. *Clap, supra. Kennerly* v. *Hennessy,* 68 Fla. 138; 19 Am. L. R. 1468. Where the written or printed matter is clearly defamatory of a particular person, no statement of extrinsic facts by way of inducement is necessary. *Regina* v. *Tutchin,* 2 Ld. Raym. 1061. *Twombly* v. *Monroe,* 136 Mass. 464, 469. Where the words do not in their material sense import a defamatory meaning and it is intended to be shown by extrinsic aid that they do bear that meaning, it is necessary that such matter be put upon the record by way of introduction, if it is new matter, or by way of innuendo, if it is only matter of explanation. An innuendo is an averment that such a one means such a particular person; or that such a thing means such a particular thing; and when coupled with the introductory matter it is an averment of the whole connected proposition, by which the cognizance of the charge will be submitted to the jury. *Rex* v. *Horne,* Cowp. 672. *Rex* v. *Burdett,* 4 B. & Ald. 314, 316. Odgers, Libel & Slander, (5th ed.) 721. *Commonwealth* v. *Child,* 13 Pick. 198. *Commonwealth* v. *Anthes,* 5 Gray, 185, 213. The motion should have been allowed.

The first sentence, "Rev. Garmus having collected a huge sum of money, and after he (meaning the said Garmus) had emptied the pockets of the weakling and bigoted ones, went back to Lithuania," does not allege or materially import that Garmus in his capacity as clergyman, if he was such, collected money criminally of the weak and bigoted, nor does it import that the weak and bigoted were induced to empty their pockets by reason of any fraud, dishonesty or moral turpitude of the plaintiff. Their conduct and his acts, so far as they appear, are consistent with their free consent to give money and with an honest collection of money on his part for a proper purpose. *Commonwealth* v. *Child, supra.*

*Carter* v. *Andrews*, 16 Pick. 1.   *Allen* v. *Hillman*, 12 Pick. 101, 104.   *Craig* v. *Proctor*, 229 Mass. 339, 340, 341.   *State* v. *White*, 6 Ired. 418.   *Trimble* v. *Anderson*, 79 Ala. 514.

The second sentence of the libel as set out in the indictment reads: "In Germany he (meaning the said Garmus) became acquainted with two young women and lived with them during all the time." This sentence does not impute an immoral living together. To have lived with two young ladies was not inconsistent with the observance of every moral standard by Garmus in his relation with them. If the Commonwealth intended to prove that the words charged criminal cohabitation it should have alleged the facts or circumstances which gave that special meaning to the verb live. It is plain to live with a person may mean merely to reside with him. *York* v. *Johnson*, 116 Mass. 482. *Adams* v. *Stone*, 131 Mass. 433. *State* v. *Corbett*, 12 R. I. 288.

The third sentence reads: "After he (meaning the said Garmus) had spent all the money he (meaning the said Garmus) remembered that there are left in America enough 'imbecile' and it is still possible to coax them not only to give him (meaning the said Garmus) money but also the remaining Lithuanian Liberty Bonds," does not charge Garmus with any illegal immoral or reprehensible conduct.

The first sentence of the second paragraph reads: "Instead of the expected report, Rev. Garmus made known that he (meaning the said Garmus) while experimenting in Germany how to attain all this, has spent all the money he (meaning the said Garmus) had collected for the National Fund and had now come to collect some more, knowing that Lithuanian old bigoted women in Amerika are generous, and some of them have Lithuanian Liberty Bonds which with the help of God can be of use to him (meaning the said Garmus.)" This sentence, while it charges that Garmus had spent all the money he had collected for the National fund and that he had now come to collect more, does not allege or fairly impute that Garmus had not the right to spend all the money, nor that he had spent any of it for improper purposes. It was not libellous to charge that Garmus had come to collect more money even though the indictment had charged

(which it did not) that he intended to collect more money from old, bigoted Lithuanian women by improper seducements.

The last sentence reads, "During the intermission he (meaning the said Garmus) took up a collection and gathered in about $80." Manifestly these words import no misconduct.

The second bill of exceptions is not considered because the alleged errors therein stated are not likely to recur upon a new indictment.

*Exceptions sustained.*