JAMES SALTMAN & others *vs.* ISRAEL NESSON & others.

Suffolk. January 26, 1909. — April 21, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Equity Pleading and Practice*, Bill, Decree. *Equity Jurisdiction*, Regarding internal affairs of corporation. *Corporation*, Jurisdiction of court of equity to control internal affairs, By-laws, Religious corporation. *Religious Society. Mandamus.*

A bill in equity by seven members of a religious corporation, who allege that they bring the suit in behalf of themselves and of other members and of the corporation, against twenty-three individuals, the prayers of which are that one of the plaintiffs, who is alleged to have been expelled from the corporation illegally, be restored to membership, that others of the defendants, who are alleged to have been elected to membership illegally, be restrained from exercising rights as members, that some of the defendants, who are alleged to have usurped certain corporate offices, be restrained from interfering with the corporate property, that others of the defendants, who are alleged to have interfered with the plaintiff in carrying on in a building owned by the corporation a form of worship which the plaintiffs contended was the only form allowed under the by-laws of the corporation, be restrained from further interference, and that one of the defendants, who is alleged to have had charge of certain financial transactions for the corporation and to have refused to account with it, be ordered to account, and that a mortgage of the land of the corporation held by him be redeemed, is multifarious.

The remedy to test the validity of the expulsion of a member of a religious corporation from the use of the privileges and the exercise of the rights of a member is by mandamus, and not by a bill in equity.

The remedy to test the validity of the election to and acceptance of membership in a religious corporation is by mandamus and not by a bill in equity.

The remedy to test the title of officers of a religious corporation, who are alleged to have usurped authority, is by mandamus and not by a bill in equity.

A by-law adopted by a religious corporation organized under the provisions of R. L. c. 125, and of c. 36, § 5, for the establishment of a synagogue for the public worship of God in accordance with the principles and doctrine of the Hebraic religion, which provided that the divine services of the congregation should be strictly in accordance with the ritual of one sect of Hebrews and that the by-law should not be changed except by unanimous vote at a special meeting of the corporation, is unreasonable and inconsistent with the legal right of the members of the corporation to control its affairs, and a bill in equity cannot be maintained to enforce such a by-law by enjoining members other than the plaintiffs from interfering with services in accordance with the ritual which it specifies, if it appears that a majority of the members of the corporation, at a regular meeting of the members and also at a special meeting subsequently called to " finally pass " upon the matter, by a proper vote changed the form of worship of the corporation.

Although in a bill in equity against twenty-three individuals, the subject matter of which relates to the internal affairs and polity of a religious corporation, a

prayer for an accounting by one of the defendants and for the redemption of a mortgage held by him was improperly included, nevertheless, if, after a long hearing of the bill on the merits before a master, by whom by agreement of parties a demurrer to the bill on the ground of multifariousness also had been ruled upon, and who in his report has ruled that the demurrer should be overruled and also has stated the account with the single defendant and has ruled that, on the payment of a certain sum, the mortgage should be redeemed, the parties agree that redemption may be ordered against the single defendant in accordance with the terms of the report, a decree ordering such redemption but dismissing the bill in all other respects will not be disturbed although the demurrer should have been sustained, since by such action further litigation may be avoided.

BILL IN EQUITY, filed in the Superior Court for the county of Suffolk on June 23, 1905, by seven individuals, including one Finberg hereinafter referred to, and the Congregation Beth Israel, a religious corporation, against twenty-three individuals.

The bill alleged that the plaintiffs were members, seatholders and a majority of the board of directors of the plaintiff corporation, and that they brought the suit in behalf of themselves as members and seatholders in the congregation and in behalf of all other members and seatholders therein " and in behalf of the Congregation Beth Israel."

The bill further alleged that the defendant corporation owned land on Columbia Street in Cambridge and a building thereon used as a synagogue for services in accordance with the principles and doctrines of the Hebraic religion, and that in one of the articles of its by-laws it was provided as follows : " The divine services of this congregation shall be strictly Askinaz. The above article shall not be changed or amended unless a special general meeting is called for that purpose, and by unanimous vote " ; that on July 24, 1904, fifteen of the defendants, among them the defendant Nesson, " conspired together for the purpose of admitting illegally and fraudulently " twelve of such fifteen " to the privileges of members of the said congregation for the purpose . . . of wrongfully controlling and managing the property of said congregation," that such twelve never had conformed to the by-laws of the corporation with respect to admission of new members, that the plaintiffs had protested to the defendant Nesson against their being treated as members, but that they nevertheless had been allowed the privileges of members, including the right to vote at business meetings of the corporation.

The bill also alleged that in November, 1904, by use of the

votes of such twelve, alleged illegally to have been permitted to vote, it was voted to expel the plaintiff Finberg from the congregation, and that since that time he had been prevented from enjoying the rights and privileges of membership.

A further allegation was that on June 11, 1905, " the defendant Nesson fraudulently and without right declared himself elected president and " five other defendants to be elected to various other offices.

It also was alleged that on June 17, 1905, and at various other times ten of the defendants conspired together and " prevented the plaintiffs from worshipping according to the form of service called Askinaz and have by force performed or caused to be performed in said synagogue divine services according to the doctrine of the Swards."

The fifteenth and last paragraph of the bill as amended was as follows:

" That by a vote of said congregation a building committee was appointed to attend to the erection of the said synagogue and to receive and expend all moneys but that the defendant, Nesson, who has always been president of said corporation, has wholly ignored the said building committee and has taken into his own hands the erection of said synagogue and the expenditure of all moneys and although often requested to do so, he has always refused and still refuses to give any account of his doings, receipts or expenditures; that the corporation gave said Nesson promissory notes secured by mortgage deeds of its real estate to the amount of three thousand dollars solely for the purpose of security for moneys he had expended or should expend on behalf of said corporation; that he has expended much less than three thousand dollars; that he has threatened to foreclose said mortgage and that the plaintiffs are ready and always have been ready to pay whatever is due said Nesson on account of these transactions."

The prayers of the bill were that the ten of the defendants who had interfered with the services of the congregation when carried on according to the doctrine known as Askinaz be enjoined from doing so further; that the twelve alleged illegally elected members be enjoined from taking any further part in the meetings of, or in the management or control of the prop-

erty of, the congregation; that twelve of the defendants be enjoined from further interfering with the plaintiff Finberg in his exercise of the rights and privileges of a member of said congregation; that the defendant Nesson and the five whom, it was alleged, he had fraudulently declared to be elected with himself as officers of the corporation, " be enjoined from interfering with the management and control of the property of said congregation " ; " that the defendant Nesson may be directed to give an account of his doings and of all moneys received and expended by him while acting for or purporting to act for or in behalf of the said corporation " ; and " be enjoined from transferring said notes or mortgages " referred to in the fifteenth paragraph of the bill as amended " and be ordered to bring said notes and mortgages into court for cancellation."

The defendants demurred, specifying as grounds of demurrer the following among others:

" 2. A court of equity has no power or authority to entertain a bill for the purpose of directly determining the validity of the contested election of the officers of the corporation.

" 3. The court of equity has no power or authority to entertain a bill for the purpose of directly determining the validity of the election of the members of a corporation."

" 7. The plaintiff's bill is multifarious by reason of the misjoinder of the parties defendant; it alleges distinct and independent matters against several parties, to wit, the validity of the election of the said Nesson as president of said corporation, charges of mal-administration against the said Nesson as president of said corporation, the validity of the election of the said defendants . . . as officers of said corporation, and the validity of the election of the several persons [as members.]

" 8. The bill is multifarious by reason of the misjoinder of causes; it embraces separate and distinct matters in reference to the said Nesson, to wit, the question of the validity of the election of said Nesson as president of said corporation, charges of mal-administration against said Nesson as president, and prays for an accounting by said Nesson of the affairs of the said corporation."

The demurrer was overruled " by consent without prejudice to raising the same questions of law at the time of the hearing

on the merits," and the case was referred to F. Rockwood Hall, Esquire, as master.

The report of the master, besides making findings of fact and rulings of law upon requests made of him by the parties, stated that the defendants' demurrer was fully argued before him. His ruling upon the subject was as follows: So far as the demurrer "is based upon the ground that the plaintiffs' proper remedy for determining the validity of the election of officers and members is by quo warranto or mandamus, I find that in this case such relief is merely incidental to other relief sought in the bill, by virtue of which a court of equity has jurisdiction of the suit. So far as the same is based upon the ground that the bill is multifarious in that it embraces separate and distinct matters in reference to separate and distinct parties, I find that the matters and parties are so connected one with the other that if tried separately it would be necessary to go over substantially the same ground in each case, and that it is more expedient, and far less expensive, to have them tried together. So far as the same is based upon the ground that no effort had been made by the plaintiffs to get relief through corporate action, it is evident that the defendants being in control of the officers and affairs of the corporation, any such attempt on the part of the plaintiffs would have been of no avail. Upon careful consideration of the above and the other grounds of demurrer my conclusion is that the demurrer should be overruled."

Other material findings in the report are stated in the opinion.

The plaintiffs excepted to the report on the ground that "the master ought to have found that the plaintiff Finberg was not legally expelled from said corporation in that there was no by-law of this corporation providing for the expulsion of members for any cause." The defendants' twelfth exception, mentioned in the opinion, was that the master erred in passing upon the legality of the expulsion of Finberg, since he should have found that Finberg's right to membership "could not be determined by this bill." The defendants fifth, sixth, eighth, ninth and tenth exceptions were to rulings of the master overruling the demurrer of the defendants in regard to the various specifications hereinbefore set out.

The exceptions to the report were heard by *Schofield*, J., who made a final decree overruling the plaintiffs' exception, sustaining the defendants' fifth, sixth, eighth, ninth, tenth and twelfth exceptions, and dismissing the bill excepting in the particular stated in the next to the last paragraph of the opinion. The plaintiffs appealed.

The case was submitted on briefs.

*H. F. R. Dolan, T. R. Bateman & C. L. Stebbins*, for the plaintiffs.

*R. H. O. Schulz*, for the defendants.

BRALEY, J.　If primarily the controversy was confined to the form of divine worship to be used by the congregation, the progress of the dissension has developed other differences which the parties also seek to litigate in the present suit. The bill as. amended asks for restoration to membership of an expelled member, and that some of the defendants who have usurped certain corporate offices may be restrained from interfering with its property, joined with demands by the corporation for an accounting by the defendant Nesson of his receipts and expenditures as mortgagee and president, and that the form of worship preferred by the individual plaintiffs may be established and confirmed.

It is apparent that under the most liberal rules of procedure there is a misjoinder of legally distinct and equitably inconsistent demands. *Bliss* v. *Parks*, 175 Mass. 539, 543. The remedy to test the validity of the expulsion of the plaintiff Finberg and the title of the usurping officers was by mandamus. *Luce* v. *Board of Examiners*, 153 Mass. 108. *Keough* v. *Aldermen of Holyoke*, 156 Mass. 403. If to render a bill multifarious the matters stated must not only be separate, but each of itself of such a character as to entitle the plaintiff to relief, the refusal of Nesson to render an account to the corporation joins a cause for relief wholly independent of that of the remaining individual plaintiffs, even if upon being requested by them he would have declined to bring proceedings in the name of the corporation, and this objection should be taken by demurrer. *Dimmock* v. *Bixby*, 20 Pick. 368, 377. *McCabe* v. *Bellows*, 1 Allen, 269. *Davis* v. *Peabody*, 170 Mass. 397, 399, 400, and cases cited. 1 Danl. Ch. Pl. & Pr. (6th Am. ed.) 346. So if the bill in substance fails to state a case for equitable relief the proper course

is to demur, although this objection may be equally available at the hearing. Story Eq. Pl. & Pr. (8th ed.) § 453. Or all these defenses may be specially raised by an answer. 1 Danl. Ch. Pl. & Pr. (8th Am. ed.) 346. Equity Rule 13.

A special demurrer having been interposed raising the objections discussed, an order was entered by consent, overruling the demurrer " without prejudice to raising the same questions of law at the time of the hearing on the merits." The case was then referred to a master before whom not only were all the allegations of the bill tried at great length, but the demurrer was argued and submitted for his decision. The practice adopted resulted in the trial of issues by a master which should have been heard and eliminated by the court, and subjected the parties to the expense of litigating on the merits disputes not within the jurisdiction of a court of equity. The master, however, having decided the grounds of demurrer adversely to the defendants, they again raised the same questions by exceptions to his report. In this state of the record, the final decree, while sustaining these exceptions, properly treated the demurrer as having ceased to perform its functions. *Crocker* v. *Dillon,* 133 Mass. 91. *Driscoll* v. *Smith,* 184 Mass. 221, 222. *United Shoe Machinery Co.* v. *Holt,* 185 Mass. 97, 102. *Vaughan* v. *Bridgham,* 193 Mass. 392, 397. 1 Danl. Ch. Pl. & Pr. (6th Am. ed.) 346. It is not important to consider them further, but for reasons previously stated the exception of the plaintiffs was properly overruled, while the defendants' fifth, sixth, eighth, ninth, tenth and twelfth exceptions were rightly sustained, and, as they did not appeal, there is no occasion to consider their remaining exceptions, which were overruled.

If these extraneous matters are thus disposed of, there remains for decision the principal ground of complaint, which is confined to the individual plaintiffs who continued members of the society. The grievance consists in the particular form of religious ceremony to be followed. The master finds that there are two forms or rituals in which the services could be conducted. At first the ritual favored by the plaintiffs was used, but later as the membership increased a different form was proposed by one section of the congregation. The agitation which followed led to antagonisms and disturbances at the meetings, in which each

faction endeavored to secure the use of its own ritual to the suppression of the other. It is unnecessary to go further into the details, or to consider the effect of the decision of the arbitrators to whom the contending factions submitted their claims, but whose award, even if violated by the defendants, expired by limitation before the master's report was filed, so that an injunction could not properly be issued to enforce such award, any right to its enforcement being a right which had ceased to exist. It is apparent from the master's very full report, that the plaintiffs and those affiliated with them established and directed the society's ecclesiastical affairs when it was organized and for some time thereafter, but by the election of new members the defendants with their adherents finally became the majority. If the admission of a large number of them to membership at one or two of the meetings was irregular, the master further finds that at a subsequent meeting the irregularity was cured, or has been waived, and that by their admission a sufficient number was secured to enable the plaintiffs' opponents to obtain full control. The change effected has been radical, as the plaintiffs with those whom they represent have dwindled to a small minority. The plaintiffs, however, including the corporation, which should have been joined as a party defendant, if this were the only issue, rely on Chap. 1 Art. 1 of the by-laws, providing that the ritual for "divine services of this congregation" should be in the form for which they now contend.

It may be assumed that the society was chartered under R. L. c. 125, and by R. L. c. 36, § 5, was empowered to enact a by-law which would prescribe a ritual or form of worship, and also to provide that the by-law could be changed or amended. The purpose of the corporation was "the establishment of a Synagogue for the Public Worship of God in accordance with the principles and doctrines of the Hebraic Religion, and for such other charitable, benevolent and religious objects as the corporation may from time to time deem advisable." Under the statutes and the certificate of incorporation the management of corporate affairs was to be conducted reasonably by the members; and the control of its business, including its form of worship and the ritual to be adopted, would ordinarily be determined by a vote of the majority. The by-law assumed to put it out of the power

of the corporation, except by unanimous vote of its members at a meeting called for the purpose, to make any change in the services performed in its worship. We are of opinion that this was unreasonable and inconsistent with the legal right of control of the affairs of the corporation existing in its membership. If it had put a reasonable limitation upon the power to change its form of worship, the by-law might have been binding; but in the form adopted it was utterly subversive of the right of control of a corporation which belongs to its members. *Richardson* v. *Union Congregational Society*, 58 N. H. 187. *Smith* v. *Nelson*, 18 Vt. 511. *Knights of Pythias* v. *Knight*, 117 Ind. 489. *Wist* v. *Grand Lodge A. O. U. W.* 22 Ore. 271. *Wardens of Christ Church* v. *Pope*, 8 Gray, 140.

This part of the by-law being ineffectual to limit the right of the majority, it was in their power in a proper way to change the form of worship, and this was done by a vote at a regular meeting. A special meeting was subsequently held " to finally pass upon this matter." At this meeting, action was taken in affirmance of the form of vote, which was a full, deliberate expression of the purpose of nearly all the members upon an essential requirement of their religious services. The will of the majority having been lawfully expressed, the bill cannot be maintained for injunctive relief.

In his memorandum of decision the trial judge states that the parties consented to a decree in favor of the corporation against the defendant Nesson for a discharge of the mortgage, upon payment of the amount found due to him with interest. If the corporation should have proceeded separately for an accounting, yet, the merits having been fully tried, there is no objection to relief being decreed in order to avoid further litigation.

We find no error in the decree of the Superior Court, which should be affirmed.

*Decree affirmed.*