ANDREW A. GRANARA & others *vs.* ITALIAN CATHOLIC CEMETERY ASSOCIATION & others.

Suffolk.   May 18, 1914. — June 17, 1914.

Present: RUGG, C. J., BRALEY, SHELDON, DE COURCY, & CROSBY, JJ.

*Italian Catholic Cemetery Association. Cemetery. Corporation,* Cemetery. *Constitutional Law. Equity Jurisdiction,* To relieve from results of fraud. *Mandamus. Equity Pleading and Practice,* Demurrer.

St. 1913, c. 292, confirming and making valid the by-laws of the Italian Catholic Cemetery Association, which had been incorporated in 1905 under R. L. cc. 78, 123, and unauthorized acts of its incorporators in voting to issue and in issuing shares of capital stock and fixing the par value of the stock and the rights of holders thereof, occasioned no breach of contract nor impairment of lawfully vested rights of property, and is constitutional.

A bill in equity by stockholders in a corporation, alleged to have been brought on behalf of the plaintiffs and all other stockholders who might wish to join therein, may be maintained against the corporation and officers and others in control of its affairs for an accounting as to shares of stock issued to the individual defendants as a gratuity, dividends declared and paid on such shares, moneys received and disbursed by the defendants in the management of the corporation for which, although requested, they have refused to account, and fees and compensation paid to themselves in excess of reasonable emolument or rightful demands.

If, after the incorporation of a cemetery corporation in 1905 under R. L. cc. 78, 123, the incorporators illegally issued and sold capital stock for cash and then adopted by-laws excluding the purchasers of such stock from participation in the business affairs of the corporation and perpetuating its control in themselves and their nominees, and in 1913 the Legislature by a special act confirmed and made valid the issue of stock and the by-laws, the persons to whom the stock was issued thereafter have the rights of stockholders, and, if such rights are not recognized and those in control of the corporation refuse to call meetings of the corporation for the choice of officers and the adoption of by-laws adapted to the reorganized association, no longer composed of the original incorporators and their successors, but of stockholders, the remedy is by a petition for a writ of mandamus, and not by a bill in equity.

A single demurrer to an entire bill in equity, which contains allegations entitling the plaintiff to some of the relief which he seeks, will be overruled, although other relief sought is not a proper subject for a bill in equity.

BILL IN EQUITY, filed in the Supreme Judicial Court on June 25, 1913, and afterwards amended, by alleged stockholders of the Italian Catholic Cemetery Association against the corporation and six individuals who were its officers and directors, seeking to have the status of the plaintiffs as to the defendant corporation established, to have certain by-laws of the corporation declared to be void, and to compel the individual defendants, officers of the corporation, to account for funds alleged to have been misapplied by them.

The plaintiffs alleged that the bill was brought on behalf of themselves and all other stockholders who wished to join therein. Other allegations of the bill as amended were in substance as follows:

The defendant corporation was organized in December, 1905, under R. L. cc. 78, 123, with nine incorporators (six of whom were defendants) for the purpose of establishing and maintaining a cemetery. Immediately after organization it was capitalized at $50,000, divided into five hundred shares of the par value of $100. Two hundred and fifty-one of the shares were sold at par and the proceeds, $25,000, were paid into the corporation treasury. The plaintiffs own a majority of the two hundred and fifty-one shares.

After such two hundred and fifty-one shares were issued and sold, the defendants, without the knowledge or consent of the association or of its stockholders or of the plaintiffs, and without any just reason or lawful authority, issued and gave to each of the officers and incorporators ten shares out of the remaining unissued capital stock of the association, ninety shares in all. The defendants received and at the time of the filing of the bill held sixty of the ninety shares, which gave to them the majority of the issued and outstanding capital stock of the association. They had received several dividends and had voted upon such shares. Such shares were issued "in order that said officers would have, and thereby they have had and do now have, the complete control and management of said association, and in order that they could manage, and thereby they have managed and do now

manage its business and affairs for their own personal benefit, and not for the benefit of said association."

The defendants, "ever since the organization of the association, have acted, and are now acting, under certain alleged by-laws that provide, in substance and in effect, that the entire government and control and management of said association shall be vested in said officers and in successors to be selected by them, and that said officers shall be elected by and from said officers and incorporators, and that any vacancy shall be filled by the remaining officers, and that the stockholders of said association and your petitioners are not eligible to hold any office or to vote at any meeting or at any election of officers; that said by-laws were intended by said officers to perpetuate them, and do perpetuate them, and their successors to be selected by them, in the control and management of said association, by usurping the powers of said association and its stockholders and denying the rights to said stockholders and your petitioners which are guaranteed by the laws of said commonwealth; that said by-laws were never submitted to or approved or adopted by said association or by its stockholders or at any meeting of said officers or incorporators."

The defendants had excluded the plaintiffs from any participation in the business affairs of the corporation, and they refused to make any report or give any information about the association to any of the stockholders, except the defendants.

"Great sums of money, approximating $100,000, have been received and paid out by the defendants, . . . a large part of which is the money paid into the association by the plaintiffs. Without any lawful authority the defendants have paid, and are now paying, to themselves and to others, excessive compensation and fees for alleged services and expenses, and as gratuities for which no service was rendered, or being rendered, or expense incurred." The defendants "are conducting the association for their own personal and private gain and profit in a way that will bring scandal upon said association." The plaintiffs alleged that they could not give further specifications "for the reason that said officers refuse to make any report on the transactions, or to account therefor, except to themselves, and they refuse to answer questions, or to allow their books of account to be examined by your petitioners."

On March 19, 1913, St. 1913, c. 292, was enacted. It is quoted in the opinion.

After the enactment of the statute the defendants continued to refuse to recognize the plaintiffs' alleged rights as stockholders.

The prayers of the bill were in substance that the status of the plaintiffs and of the stockholders of the association be defined and established; that a meeting of the stockholders of the association be held to elect officers and to transact and care for the business of the association upon such terms and conditions as should be fixed by the court; that the by-laws complained of be declared null and void; that the acts and doings of the officers in issuing the above described sixty shares be declared null and void, and that the officers be ordered to return the shares to the association, or to account therefor; that all the acts and doings of the officers complained of as contrary to law, should be declared null and void; that the association and its officers be ordered to give forthwith "a true and just account of all the moneys and property of said association which have been received and expended, and of the debts and credits outstanding, and of all services."

The defendants demurred. The case was reserved by *De Courcy,* J., for determination by this court.

The case was submitted on briefs.

*H. S. Davis & F. Leveroni,* for the defendants.

*J. H. Burke, R. Walsworth & J. L. Porcella,* for the plaintiffs.

BRALEY, J. The defendant corporation having been organized under R. L. c. 78, § 1, and c. 123, for the purpose of establishing and maintaining a cemetery, the incorporators had no authority to create a capital stock of $50,000 divided into five hundred shares with a fixed par value of $100 each, and to issue certificates for two hundred and fifty-one shares to themselves and to the plaintiffs, who by purchase are averred to have become and now are the holders of a majority of the shares thus issued. R. L. c. 78, § 7. *Monumoi Great Beach* v. *Rogers,* 1 Mass. 159, 163, 165. *Donnelly* v. *Boston Catholic Cemetery Association,* 146 Mass. 163, 166. *Packard* v. *Old Colony Railroad,* 168 Mass. 92. But § 2 of c. 78 provides, that such corporations shall be subject to the provisions of R. L. c. 109. By § 3 of this chapter, which is a re-enactment of Rev. Sts. c. 44, § 23, Gen. Sts. c. 68, § 41, Pub. Sts. c. 105, §§ 2, 3, "All corporations which are organized

under general laws shall be subject to such laws as may be hereafter passed affecting or altering their corporate rights or duties or dissolving them." It was doubtless under this reserved power that upon the partly diverse petitions of the plaintiffs and the defendants the Legislature enacted the St. of 1913, c. 292, which provides, that, "The by-laws of the Italian Catholic Cemetery Association, a corporation duly established in the year nineteen hundred and five under the general laws and situated in the city of Boston, and the acts of said corporation in voting to issue and in issuing shares of capital stock and fixing the par value and the rights of stockholders thereof, are hereby confirmed and made valid to the same extent as if at that time the said corporation had authority to issue said stock and to fix the par value thereof and to adopt by-laws." The corporation having been organized while the R. L. c. 109, § 3, were in force, it is subject to those provisions, and is bound by any reasonable amendment and alteration which the Legislature might impose. *Roxbury* v. *Boston & Providence Railroad,* 6 Cush. 424, 432. And in *Commissioners on Inland Fisheries* v. *Holyoke Water Power Co.* 104 Mass. 446, 451, where the Gen. Sts. c. 68, § 41, were considered, it was said, "This statute, first introduced into the general legislation of the Commonwealth by St. 1830, c. 81, . . . has been as much a part of all charters since granted as if inserted therein; and was manifestly adopted with the intention of reserving for the future a fuller parliamentary or legislative power than would otherwise be consistent with the effect to be allowed to the special terms of particular charters, under the judicial construction of the constitutional prohibition against impairing the obligation of contracts." It is then said, that while it is unnecessary to define the extreme limits of the power, "it at least reserves to the Legislature the authority to make any alteration or amendment in a charter granted subject to it, that will not defeat or substantially impair the object of the grant, or any rights which have vested under it, and that the Legislature may deem necessary to secure either that object or other public or private rights."

The act manifestly on the face of the bill occasions no breach of contract or impairment of lawfully vested rights of property. *Durfee* v. *Old Colony & Fall River Railroad,* 5 Allen, 230, 241, 242,

243. *Agricultural Branch Railroad* v. *Winchester,* 13 Allen, 29, 33. *Thornton* v. *Marginal Freight Railway,* 123 Mass. 32, 34.

The purposes for which the association was incorporated are fully preserved. Its title to the cemetery lands and their management is untouched. The plaintiffs and other purchasers of stock are given their just rights by membership in the corporation where under the averments of the bill the defendants before enactment of the statute had solicited and obtained funds, not as gifts but as investments, under conditions or representations which were unauthorized. *Stewart* v. *Joyce,* 201 Mass. 301. And any discussion as to the rights of the plaintiffs against the corporation or the individual defendants independently of the St. of 1913, c. 292, is unnecessary. See *Ginn* v. *Almy,* 212 Mass. 486, 505, 506.

The demurrer, of course, admits every essential allegation of the bill. It appears that the defendants have purchased land and established a cemetery wherein interments have been made, and, the statute being constitutional, the plaintiffs as stockholders are entitled under the allegations of the bill to an accounting for the stock which the defendants issued to themselves as a gratuity, and for the dividends declared and paid thereon, as well as for the moneys they have received and disbursed in the management of the association for which they have refused to account, and the fees and compensation paid to themselves, alleged to have been far in excess of any reasonable emolument or rightful demands. *Von Arnim* v. *American Tube Works,* 188 Mass. 515, and cases cited.

The bill also asks for the abrogation of the by-law alleged to have been devised by the individual defendants to perpetuate in office themselves, or those whom they might choose to fill vacancies, and that a meeting of the stockholders may be ordered. The enabling statute recognized this by-law as if it had been passed by the stockholders, but, having placed the association upon a basis with corporations organized with a fixed capital divided into transferable shares represented by certificates, the plaintiffs are entitled to attend and vote at corporate meetings held for the election of officers, with the right to participate in dividends and profits. *Fisher* v. *Essex Bank,* 5 Gray, 373, 378. The corporation is not insolvent, and the act in question is not a scheme to secure primarily the payment of creditors to which,

until accomplished, the rights of stockholders properly may be subordinated as in *Phillips* v. *Eastern Railroad,* 138 Mass. 122, 126, relied on by the defendants.   It is furthermore apparent that our laws relating to the ownership of stock are applicable.   R. L. c. 109, §§ 32, 39.   *Boston Music Hall Association* v. *Cory,* 129 Mass. 435, 436.   If the defendants refuse to call a meeting for the choice of officers and the adoption of by-laws adapted to the reorganized association, no longer composed of the original incorporators or their successors, but of stockholders, the appropriate remedy is mandamus.   *McCarthy* v. *Street Commissioners,* 188 Mass. 338, 340.   *Saltman* v. *Nesson,* 201 Mass. 534.   *Bassett* v. *Atwater,* 65 Conn. 355.   *People* v. *Cummings,* 72 N. Y. 433.   It is for a majority of the lawful stockholders present at the meeting to decide under R. L. c. 109, § 5; c. 123, § 7, what the by-laws of the corporation shall be, subject, however, under c. 78, § 9, to the approval of the State board of health of any by-law which relates to the reception and cremation of the bodies of the dead, and the disposition of the ashes thereof.   And until it is manifest that no change can be effected through appropriate corporate action, there is no occasion to determine whether the present by-law is so unreasonable and oppressive as to be invalid.   See *Saltman* v. *Nesson,* 201 Mass. 534, 541.

The demurrer, however, being a single demurrer to the whole bill, must be overruled.   *Sears* v. *Trowbridge,* 15 Gray, 184. *York* v. *Johnson,* 116 Mass. 482.   1 Danl. Ch. Pl. & Pr. (5th Am. ed.) 597.   *Emans* v. *Emans,* 1 McCarter, 114.   If injunctive relief is also necessary to protect the plaintiffs' property rights from further impairment until the account is stated, and the title to the stock alleged to have been fraudulently issued is determined, application may be made to a single justice.

By the terms of the reservation the case is to stand for hearing on the merits.

*Decree accordingly.*