GREEK ORTHODOX COMMUNITY & others *vs.* ARISTOMENIS MALICOURTIS & others.

Middlesex.   March 11, 1929. — June 3, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & FIELD, JJ.

*Religion. Corporation,* Religious. *Constitutional Law,* Religious freedom. *Trust. Equity Pleading and Practice,* Master: findings, recommittal; Appeal.

While, where property is held by a religious society upon trusts for the purpose of promoting certain doctrines in accordance with the articles of faith, discipline, government and forms of the particular denomination or sect, recourse may be had to the courts by parties in interest to restrain a diversion of the property thus held in trust to other uses than those specified in the instrument manifesting the trust, in this Commonwealth, property deeded to or acquired by a religious society or corporation in its denominational name, but without other trust provisions expressed in the instrument under which it is deeded or ac-

quired, is not held upon any trust to promote the doctrines or to be administered in accordance with the discipline and government of the particular denomination.

A constitution and regulations with the force of a constitution, adopted by a religious corporation after it had acquired property, or property had been conveyed to it, in fee simple without condition or express trust, cannot of their own force have the effect of requiring that thereafter such property be held in trust subject to their provisions, nor give the courts of this Commonwealth jurisdiction to enforce such provisions in a suit in equity averring violation of such a trust.

A religious corporation adopted a constitution, which provided that it should "be in effect for four years," and regulations, which by the provisions of the constitution were to have the force and effect of a constitution and which provided that "It is permissible to revise these special Regulations after four years from their adoption, at the decision of the Administrative Board, which Board shall call a meeting of the members of the Community for this purpose and decide by majority of 50 per cent plus one." Several months after the expiration of the four years, the administrative board, which had been elected after such four years, proposed amendments to the constitution and called a meeting of the members of the corporation for action thereon. *Held*, that such action was in accordance with the express provisions of the constitution and the regulations.

Contentions, in a suit in equity to oust the defendants from office as administrative board of a religious corporation called the "Greek Orthodox Community of Lowell, Mass., 'Holy Trinity,'" which had acquired its property in fee simple without condition or express trust, that the defendants by their acts and intent in failing to recognize and in repudiating the ecclesiastical authority and leadership of a certain metropolitan to whom the plaintiffs contended the church was subject, in discharging and prohibiting a certain priest from acting as officiating priest of the church, and in appointing another as priest of said church without the approval of such metropolitan, had rendered themselves ineligible to hold office in the corporation, were *held*, to be matters purely ecclesiastical in their nature, of which the court would not take jurisdiction.

Under art. 11 of the amendments to the Constitution of this Commonwealth, religious societies, whether corporate or unincorporate, have the right to elect their pastors or religious teachers.

A provision of the constitution of a Greek orthodox church corporation which would put it out of the power of the corporation to amend its constitution except with the approval of a certain named metropolitan is invalid because unreasonable and inconsistent with the legal right of control of the affairs of the corporation existing in its membership, and in such form is utterly subversive of the right of control of a corporation which belongs to its members.

BILL IN EQUITY, filed in the Superior Court on July 3, 1928, to restrain violation by the defendants of the provi-

sions of a trust, subject to which, the plaintiffs averred, property was held by the plaintiff corporation.

The suit was referred to a master. Material facts found and evidence excluded by him are stated in the opinion. By order of *Greenhalge*, J., there were entered an interlocutory decree overruling exceptions by the plaintiffs to the report and a final decree dismissing the bill. The plaintiffs appealed from both decrees.

*F. L. Simpson*, (*G. C. Eliades* with him,) for the plaintiffs.

*E. J. Tierney*, (*J. P. Farley* with him,) for the defendants.

PIERCE, J. This is a suit in equity to enforce the terms of an alleged trust, and to restrain the violation thereof by the defendants. The plaintiffs are the Greek Orthodox Community of Lowell, Mass., "Holy Trinity," (herein referred to as The Community), and certain individuals who claim to be its administrative board; the defendants are other individuals who claim to be its administrative board by reason of a certain election.

The Community is a religious and charitable corporation duly organized under the laws of this Commonwealth on April 20, 1900. Its purposes are the establishment and maintenance of a church to provide religious instruction according to the ritual of the Greek Orthodox Church, and the maintenance of schools for literary and scientific purposes.

On December 28, 1923, the members of the plaintiff corporation adopted a constitution by the terms of which Metropolitan Vassilios Komvopoulos was named metropolitan of America and Canada, and The Community subjected itself religiously and spiritually to him. The management of The Community belonged to the members and was to be carried out by an administrative board of twelve elected by the members with the coöperation of the metropolitan. Provision was made that special regulations, having the force and effect of a constitution, duly composed and validated by the metropolitan, should provide for resources to maintain and promote its educational institutions. It was further provided that the constitution should be in effect from December 28, 1923, the date of its adoption, and "should be in effect for four years." In January or February, 1924, regulations

were adopted by the duly elected administrative board and approved by the metropolitan; these regulations, together with the constitution, were recognized and followed by The Community from the time of adoption through December 28, 1927.

On February 22, 1928, in accordance with the provisions of the constitution, the defendants were elected members of the administrative board. On March 9, 1928, acting as the administrative board, they elected officers; and on April 24, 1928, voted to prepare an amended constitution and regulations and to submit the same to the members for approval on May 30. At a meeting of the members on that date it was voted that the constitution and regulations should be amended, but no specific changes were made. All the charter provisions relative to the calling of the meetings and notices thereof were complied with. Thereafter the defendants held several meetings to prepare proposed amendments to the constitution and regulations; on or about June 23 they circulated to the members of The Community printed copies of the proposed amendments, and called a meeting of The Community for July 6 to vote on them. Prior to July 6 this bill in equity was filed, and, pursuant to stipulation, the meeting was not held and the proposed amendments were not acted upon.

On June 8, 1928, a meeting of The Community was called by a justice of the peace upon petition of five members, under G. L. c. 67, § 12. The individual plaintiffs were elected members of an administrative board, and elected officers from their number. If the defendants were not duly elected, or if for any reason they ceased to hold office, it is agreed that the individual plaintiffs were elected by proper procedure, as provided by statute for the election of directors and officers of a corporation which has no officers.

The plaintiffs allege that the defendants were not duly elected members of the administrative board because persons, not members of The Community, were permitted to participate in the election; that the election was not in coöperation with the metropolitan, as provided in the constitution; that the defendants had repudiated allegiance to the metropolitan

and thus ceased to be members of the corporation; that since the election was illegal and void, the defendants never acquired any right to hold or manage the property of the corporation, to interfere with the management of the church or church services, nor to discharge or employ priests, employees or other persons on behalf of the corporation.

The case was referred to a master who, in addition to the foregoing facts, found that there was no evidence that the property of the corporation, which up to the time of this suit was used to carry out the purpose of its creation, ever was or is now devoted to any particular uses or to the ecclesiastical authority or control of Metropolitan Vassilios Komvopoulos or of the Greek Orthodox Metropolis of America and Canada or of any other person or organization, except as appears from the charter and from the constitution and regulations.

The master excluded certain evidence offered by the plaintiffs and contained in the following offer of proof: "The plaintiffs offer to show that the defendants did not on February 22, 1928, nor for a long period prior to that time recognize Vassilios Komvopoulos as Metropolitan or Archbishop of the Metropolis of the United States and Canada or of the Greek Orthodox Community 'Holy Trinity' of Lowell and that since the year 1924, they had repudiated his ecclesiastical and religious leadership and authority; that they sought offices in said Greek Orthodox Community with the intent and for the purpose to induce said Community to repudiate the ecclesiastical authority of said Komvopoulos and of said Metropolis of the United States and Canada; that it was the intent and purpose of the defendants on and prior to February 22, 1928, to induce and cause said Community to adopt amendments to the Constitution and Regulations of said Community withdrawing its submission to the ecclesiastical and religious authority of said Komvopoulos as Metropolitan and Archbishop and of the said Metropolis of the United States and Canada and to cause said Community and the members thereof to attempt to divert the property of said Community to religious uses and purposes free from the ecclesiastical authority of said Komvopoulos and of said Metropolis of the United States and Canada; that

pursuant to said intent and purpose the said defendants purporting to act as Administrative Board of said Greek Orthodox Community and on or about March 20, 1928, discharged the priest who had theretofore been officiating as priest of said Greek Orthodox Community, 'Holy Trinity', and who had been chosen subject to the approval of said Komvopoulos as Metropolitan and purported to appoint a priest without the approval and contrary to the wishes of said Komvopoulos as Metropolitan; and said defendants purporting to act as Administrative Board of said Greek Orthodox Community caused said priest so purporting to be appointed by them to officiate as priest in said Greek Orthodox Community, 'Holy Trinity,' of Lowell contrary to the wishes and in violation of the directions and orders of said Komvopoulos as said Metropolitan and Bishop; that said defendants in pursuance further of said purpose and intent to repudiate the authority of said Komvopoulos as Metropolitan and of said Metropolis of the United States and Canada prohibited said Komvopoulos to officiate as Metropolitan or priest in said Greek Orthodox Community, 'Holy Trinity' of Lowell, and on or about April 24, 1928, began proceedings to induce some of the members of said Greek Orthodox Community to adopt amendments to the Constitution and Regulations of said Community; that said proceedings were instituted with the intent and purpose to divert the property of said Community from ecclesiastical uses under the ecclesiastical authority of said Komvopoulos as Metropolitan and of said Metropolis of the United States and Canada and to use said property for ecclesiastical and religious purposes free from the ecclesiastical authority of any Metropolitan or Archbishop though otherwise according to the doctrines of faith of the Greek Orthodox Faith.

"The plaintiffs further offer to show that the defendants purporting to act as Administrative Board of the said Greek Orthodox Community and in pursuance of an intent and purpose so to do entertained on and prior to February 22, 1928, and thereafter down to the filing of the bill in equity in this action, have conducted the ecclesiastical affairs of said Greek Orthodox Community in violation of the Con-

stitution and Regulations of said Community then in force and so recognized by the members of said Community and by said Greek Orthodox Community and free from subjection to the ecclesiastical and religious authority of said Komvopoulos as Metropolitan and Archbishop and of said Metropolis of the United States and Canada.

"The plaintiffs further offer to prove that said defendants on February 22, 1928, and at all times since that date have entertained the purpose to repudiate the ecclesiastical authority of said Vassilios Komvopoulos as Metropolitan and Archbishop and have repudiated his authority as such Metropolitan contrary to the tenets of the Greek Orthodox Faith and that the defendants on said February 22, 1928, and continuously thereafter have intended to establish a congregational form of government in said Greek Orthodox Community and over said Greek Orthodox Church 'Holy Trinity' of Lowell; that said form of ecclesiastical government is contrary to the tenets of the Greek Orthodox Faith and contrary to the Constitution and Regulations in force in said Greek Orthodox Community.

"The plaintiffs further offer to prove that according to the Greek Orthodox Faith no Church can exist without subjection ecclesiastically to a Metropolitan or Bishop and as part of a Metropolis; and the plaintiffs further offer to prove that in pursuance to the intent and purpose hereinbefore set forth, the defendants have threatened to conduct the property of said Greek Orthodox Community for ecclesiastical purposes free from the ecclesiastical or religious authority of said Komvopoulos as Metropolitan and Archbishop; and of said Metropolis of the United States and Canada, and also free from the ecclesiastical authority of any Metropolitan or Archbishop of any Metropolis.

"The plaintiffs further offer to prove that the respondents, on February 22, 1928, and continuously since that time have apostatized from the tenets of the Greek Orthodox Faith, that they have and had on said February 22, 1928, apostatized and repudiated the form of ecclesiastical government required by said Greek Orthodox Faith and that they intended to and in fact have diverted the property of said

Greek Orthodox Community from the purposes required by
said Greek Orthodox Faith and by the Constitution and
Regulations of said Greek Orthodox Community, and have
used and applied said property to purposes forbidden by the
tenets of said Faith and in a manner prohibited by the Con-
stitution and Regulations of said Greek Orthodox Com-
munity.

"The plaintiffs further offer to prove that Vassilios
Komvopoulos was duly chosen Metropolitan or Archbishop
of the Independent Metropolis of the United States and
Canada, Inc., on or about                    that he
continued to be Metropolitan of said Metropolis continu-
ously down to the date of the filing of the bill in equity in
this action and that he is now Metropolitan of said Metrop-
olis; that said Metropolis is the Metropolis of the United
States and Canada referred to in the Constitution and Regu-
lations of the Greek Orthodox Community, the plaintiff
in this action, and that said Vassilios Komvopoulos is the
Metropolitan referred to in said Constitution and Regula-
tions."

The reasons assigned by the master for the denial of this
offer of proof and the exclusion of the evidence therein offered
were (1) that no trust was created by the charter, constitu-
tion and regulations or, if one were created, it had expired;
(2) that whether a trust was created or not, the belief and
intent of the defendants did not disqualify them from be-
coming or continuing to act as officers of The Community;
(3) that the acts stated in the offer of proof were matters for
internal discipline within The Community, and not for the
relief sought in this bill. Objections were duly filed by the
plaintiffs to the exclusion of the proffered evidence in accord-
ance with Equity Rule 26 (1926).

The trial judge was of opinion that the master was right
as matter of law in excluding said evidence; he denied the
plaintiffs' motion to recommit the report to the master,
entered an interlocutory decree overruling the plaintiffs'
exceptions and confirming the master's report, and entered
a final decree dismissing the bill. The case is here on the
plaintiffs' appeals from the interlocutory and final decrees.

As the evidence is not reported the master's findings of fact are conclusive, unless mutually inconsistent or plainly wrong. *Ginn* v. *Almy*, 212 Mass. 486, 496.   *Glover* v. *Waltham Laundry Co.* 235 Mass. 330, 334.   It is well settled that a motion to recommit a master's report rests in the sound discretion of the judge.   *Hennessey* v. *Preston*, 219 Mass. 61, 65. *Mason* v. *Albert*, 243 Mass. 433, 437.   *Selwyn* v. *Harris*, 251 Mass. 68, 70.

The plaintiffs' first contention is "That the charter, constitution and regulations of The Community created a trust which is still in full force and effect by virtue of which the property of The Community was devoted to the purposes and to management under the ecclesiastical authority and control as prescribed in said charter, constitution and regulations and that the respondents by reason of their acts, beliefs, and intention, as set forth in the offer of proof were violating provisions of this trust and were attempting to divert the property to other uses."

Where property is held by a religious society upon trusts for the purpose of promoting certain doctrines in accordance with the articles of faith, discipline, government and forms of the particular denomination or sect, recourse may be had to the courts by parties in interest to restrain a diversion of the property thus held in trust to other uses than those specified in the instrument manifesting the trust.   *St. Luke's Church* v. *Slack*, 7 Cush. 226.   *Canadian Religious Association* v. *Parmenter*, 180 Mass. 415.   *Kedrovsky* v. *Rojdesvensky*, 214 App. Div. (N. Y.) 483, affirmed in 242 N. Y. 547.   *Kicinko* v. *Petruska*, 259 Penn. St. 1.   *Lindstrom* v. *Tell*, 131 Minn. 203.   *Mt. Zion Baptist Church* v. *Whitmore*, 83 Iowa, 138.   *Pounder* v. *Ashe*, 44 Neb. 672.   Many times it is a difficult question to determine whether in a given case property is subject to a trust.   Where an express trust is created under deeds or wills for the support of religious worship according to the tenets, practices, forms and discipline of any particular denomination, the whole problem is to construe the instrument to give effect to the intent of the settlor as manifested by the words illumined by all the attendant factors, unless they are inconsistent with some positive rule

of law or repugnant to other terms of the instrument. *Chase v. Dickey,* 212 Mass. 555. *Attorney General v. Armstrong,* 231 Mass. 196. *Eustace v. Dickey,* 240 Mass. 55. *Dittemore v. Dickey,* 249 Mass. 95, 104, 105. Whatever may be the rule in other jurisdictions where property is deeded to or acquired by the religious society in its denominational name, in this Commonwealth property thus acquired is not held upon any trusts to promote the doctrines or to be administered in accordance with the discipline and government of the particular denomination. *Baker v. Fales,* 16 Mass. 488. *McNeilly v. First Presbyterian Church in Brookline,* 243 Mass. 331. *Syrian Antiochean Church v. Ghize,* 258 Mass. 74.

It is contended that the constitution and regulations adopted on December 28, 1923, imposed a trust on the property which subjected it to the direction and control of Metropolitan Komvopoulos. All the property was acquired previous to the date of the adoption of the constitution, and the title thereto was in the corporation. Up to the time of the adoption of the constitution the property had never been devoted to any particular uses or subjected to the ecclesiastical authority of any person except that, as required by the charter of the corporation, it was devoted to the teaching of religion under the ritual of the Greek Orthodox Church. There is no finding by the master that the ritual of that church was ever departed from by the defendants.

In the absence of any finding to the contrary, we assume that the property in the case at bar was conveyed to the corporation in fee simple, without condition or express trust. The only charter provision respecting the property is that the church shall be maintained to provide religious instruction according to the doctrines of the Greek Orthodox Church. The provisions of the constitution and regulations could not affect the title to the corporate property or impose a trust upon it. *Warner v. Bowdoin Square Baptist Society,* 148 Mass. 400, 404, and cases cited. *McNeilly v. First Presbyterian Church in Brookline, supra,* page 339.

The defendants were duly elected to the administrative board by the members of The Community, in accordance

with the constitution and regulations which reposed the entire management of The Community in its members.   Under the statutes, the management of corporate affairs was to be conducted reasonably by the members; and the control of its business would ordinarily be determined by a vote of the majority. *Saltman* v. *Nesson,* 201 Mass. 534, 541.   The constitution adopted on December 28, 1923, expressly provided that "This Constitution of seven articles has been voted upon in a public general assembly by the members of the Community article by article and as a whole and shall be in effect for four years."   By article 29 of the special regulations, which in accordance with article 4 of the constitution have the force and effect of a constitution, it was provided that "It is permissible to revise these special Regulations after four years from their adoption, at the decision of the Administrative Board, which Board shall call a meeting of the members of the Community for this purpose and decide by majority of 50 per cent plus one."   It is apparent that the constitution and regulations were adopted to be in force for a period of four years.   The defendants in seeking to amend the constitution and regulations in 1928 were proceeding in accordance with the express provisions of the constitution and the regulations.

The plaintiffs contend that the defendants by their acts and intent in failing to recognize and in repudiating the ecclesiastical authority and leadership of Metropolitan Komvopoulos, in discharging and prohibiting a priest approved by him from acting as officiating priest of the church, and in appointing another as priest of said church without the approval of Metropolitan Komvopoulos, have rendered themselves ineligible to hold office in The Community.   These are matters purely ecclesiastical in their nature.   "It is not the province of civil courts to enter the domain of religious denominations for the purpose of deciding controversies touching matters exclusively ecclesiastical." *Moustakis* v. *Hellenic Orthodox Society,* 261 Mass. 462, 466, and cases cited. *Krauthoff* v. *Attorney General,* 240 Mass. 88, 92. *Shepard* v. *Barkley,* 247 U. S. 1, and cases cited.   Religious societies, whether corporate or unincorporate, have the right to elect their pastors

or religious teachers. Art. 11 of the Amendments to the Constitution of Massachusetts. "That constitutional guaranty secures against implied restrictions the tendency to change and modification in creeds and statements of belief and affords opportunity for evolution of religious thought through freedom in choice of religious teachers. It relieves religious societies from difficulties as to interpretation of ancient forms of expression of denominational views, *Smyth* v. *Phillips Academy*, 154 Mass. 551, by the simple expedient of permitting them, through the usual means of the rule of the majority, freely to select their expounders of religious conceptions." *McNeilly* v. *First Presbyterian Church in Brookline*, 243 Mass. 331, 340. It is no answer to say that the actions of the defendants are illegal because provisions in the regulations (art. 20, 21) require the approval of the metropolitan in all matters concerning the management of The Community and the appointment of priests. Such a regulation, putting it out of the power of the corporation to amend its constitution except with the approval of Metropolitan Komvopoulos, is "unreasonable and inconsistent with the legal right of control of the affairs of the corporation existing in its membership," and in such form it is "utterly subversive of the right of control of a corporation which belongs to its members." *Saltman* v. *Nesson, supra,* page 542.

*Decrees affirmed.*